UNITED STATES of America,
Plaintiff–Appellee,

v.

Laroan F. VERNERS, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Guessinia VERNERS also known as
Guessinia Holland, Defendant–
Appellant.

Nos. 94–5029, 94–5030.

United States Court of Appeals,
Tenth Circuit.

April 11, 1995.

Martin S. Pinales (Edmund J. McKenna with him on the brief) of Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for defendant-appellant Laroan F. Verners (94–5029).

C.W. Hack, Tulsa, OK, for defendant-appellant Guessinia Verners a/k/a Guessinia Holland (94–5030).

Allen J. Litchfield, Asst. U.S. Atty. (Steven C. Lewis, U.S. Atty., with him on the brief), Tulsa, OK, for plaintiff-appellee.

Before HENRY and McKAY, Circuit Judges, and SAFFELS,* Senior District Judge.

McKAY, Circuit Judge.

The appellants, mother and son, were convicted of various drug-related offenses and sentenced to lengthy prison terms. Both Verners were convicted of one count of possession of a controlled substance (cocaine base) with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a); 21 U.S.C. § 860(a) (distribution or manufacturing near a school); 18 U.S.C. § 2 (aiding and abetting); and of one count of maintaining a place for the purpose of manufacturing a controlled substance, in violation of 21 U.S.C. § 856(a)(1) (the "crack-house" statute). In addition, Laroan Verners was convicted of use of a firearm during and in relation to a federal drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). The Verners challenge the sufficiency of the evidence for all of these counts. (Although Mrs. Verners does not specifically challenge her conviction for aiding and abetting, she does challenge the underlying facts which support this conviction. In light of this ambiguity, we have addressed the sufficiency of the evidence for this conviction.) Mr. Verners also challenges the calculation of the amount of cocaine base used to determine his sentence under the Sentencing Guidelines. Finally, Mrs. Verners contends that the district court abused its discretion in failing to grant her motion for a separate trial.

The government has demonstrated the following facts. On January 5, 1993, a team of law enforcement officers from the City of Tulsa, Oklahoma, executed a search warrant at the home of Guessinia Verners. Laroan Verners had used the house as his residence at one time, still visited the house regularly, and still gave the address as his residence. He used his former bedroom in the house to store some of his possessions, although it appears that he did not sleep there. In the bedroom associated with Mr. Verners, police found digital scales, razor blades, cut (a substance used to dilute the purity of cocaine), large amounts of cash, two handguns—one loaded, one unloaded—and ammunition. No fingerprints were found on either gun. The police also found towels and baggies containing small amounts of cocaine in this bedroom. In the closet, some clothes, identified as be-

* Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting  by designation.

ing similar or identical in appearance to clothes worn by Mr. Verners, were found; the bedroom also contained boxes of record albums belonging to Laroan Verners. The police also found some receipts and business records belonging to Mr. Verners, including a notebook alleged to be a drug ledger.

The other main items of evidence in this case were found in the kitchen. Inside the microwave were spatters which were tested and revealed to contain cocaine. In the cabinet a pyrex cup was found containing a large "cookie" of cocaine base, or "crack" cocaine, weighing over 100 ounces. Boxes of baking soda and plastic baggies were also found. Taken as a whole, the evidence strongly indicated that powder cocaine was being converted in the microwave to cocaine base, then weighed and bagged for distribution. However, no evidence of an actual sale was introduced. In fact, the only other evidence of involvement with drugs by either Laroan or Guessinia Verners were statements (overheard by the police) that were made at the time of the search by Mrs. Verners to her daughters. After being informed that cocaine had been found in the microwave and that she should consider consulting an attorney, Mrs. Verners was overheard to say, "The phone rang just before they found the stuff in the microwave. They got a phone call. Who knew about that besides us?", or words to that effect. She also apparently asked her daughters to whom they might have talked who could have tipped off the police.

■ "In determining the sufficiency of the evidence, we review the record de novo, ... and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Urena,* 27 F.3d 1487, 1489 (10th Cir.) (citations and internal quotations omitted); *cert. denied,* —— U.S. ——, 115 S.Ct. 455, 130 L.Ed.2d 364 (1994). We review each conviction in turn.

■ Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could find that Laroan Verners possessed cocaine with the intent to distribute it. In order to support a conviction for possession with intent, the government must prove knowing possession of a controlled substance, with intent to distribute. Possession need not be actual, but may be constructive. *United States v. Culpepper,* 834 F.2d 879, 881–82 (10th Cir.1987). Since the defendant was not at the house when the drugs were confiscated, the government relied on a constructive possession theory. "In order for an individual constructively to possess property, he must knowingly hold the power and ability to exercise dominion and control over it.... With regard to narcotics, we have defined constructive possession as 'an appreciable ability to guide the destiny of the drug.'" *Id.* at 881 (*quoting United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982) (internal citations omitted)). The evidence was sufficient to meet this test. Laroan Verners plainly continued to exercise dominion and control over his bedroom and enjoyed unfettered access to the kitchen. A jury could reasonably infer that he had constructive possession of the cocaine found in these two rooms.

■ The government also provided sufficient evidence of Laroan Verners's intent to distribute. One of the investigating officers testified that the amount of cocaine recovered was in excess of an amount which might be possessed for personal use. (In fact, the amount was estimated to be equivalent to 2,000 dosage units.) Coupled with the presence of scales, razor blades, cut, guns and ammunition, large amounts of cash, and the notebook in Laroan Verners's bedroom, the large amount of cocaine and the baggies found in the kitchen provided ample evidence for a jury to conclude that Mr. Verners was involved in the distribution of drugs.

The case against Guessinia Verners for possession with intent to distribute is far weaker and presents a close question. Although there is ample evidence that she had knowledge of the presence of the drugs in the kitchen and sufficient evidence to show constructive possession of these drugs, there is little, if any, evidence of her intent to distribute. The government did not, for ex-

ample, offer any evidence that she actively participated in either the manufacture or distribution of the drugs.

■ The government suggests that her statements evidenced her intent to distribute. By showing knowledge of the "stuff" in the kitchen, the statements do tend to show acquiescence in the drug activities. However, on their own, the statements do not evince an intent to distribute. The government bolstered this theory with evidence that Mrs. Verners knowingly benefitted from the drug operation. For example, the government introduced testimony that the Verners' home contained some nice furnishings. The government also established that she was paying substantial amounts of cash for an addition to the home that was being constructed. Although the government did not prove that the money to pay for these improvements was derived from drug sales, Mrs. Verners was not employed at the time and no alternative source of income was identified.

■ This evidence is simply insufficient to support a conviction for possession with intent to distribute.[1] At best, this evidence shows that she had the intent to aid and abet her son.

> To be guilty of aiding and abetting a crime, the defendant must willfully associate h[er]self with the criminal venture and seek to make it succeed through some action on [her] part. The government must prove more than mere presence at the scene of the crime even if coupled with knowledge that the crime is being committed. However, participation may be established by circumstantial evidence, and the evidence may be of "relatively slight moment."

*United States v. Esparsen,* 930 F.2d 1461, 1470 (10th Cir.1991) (internal citations and quotations omitted), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). Although the evidence against Mrs. Verners is admittedly of "relatively slight moment," we think a reasonable jury could infer from the circumstances that Mrs. Verners was making an active effort to conceal the existence of the drugs in the kitchen. The jury could also infer that she was knowingly benefitting from the drug activities occurring in the house. Thus, although we must reverse the conviction for the underlying crime of possession with intent to distribute, we affirm the conviction for aiding and abetting.[2]

■ On the charge of maintaining a residence for the purpose of manufacturing drugs under the so-called "crack-house statute," 21 U.S.C. § 856(a)(1), the evidence is sufficient only to convict Laroan Verners. Section 856(a)(1) makes it unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance." This circuit has rarely addressed this statute. In *United States v. Williams,* 923 F.2d 1397 (10th Cir. 1990), *cert. denied,* 500 U.S. 925, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991), we stated that in order to convict someone of violating this statute, the government must "prove that the defendant (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance." *Id.* at 1403 (*citing United States v. Onick,* 889 F.2d 1425, 1431 (5th Cir.1989)). Although *Williams* broke the statute down into three separate elements, it did little to elaborate on its meaning. In particular, there are two terms in the statute which, although not downright ambiguous, are imprecise and require some explanation.[3]

■ The first such term is "maintain." In *United States v. Williams,* we found that,

---

1. Because we are overturning this conviction, we must necessarily reverse Mrs. Verners's conviction under 21 U.S.C. § 860(a) as well. This section, which penalizes the commission of a drug offense within 1,000 feet of a school, is essentially a sentence enhancement provision for the principal drug offense.

2. Since we find that Mrs. Verners is not guilty of the underlying crime, it is apparent that Laroan Verners cannot be convicted of aiding and abetting her. One cannot aid and abet an aider and abetter, nor can one aid and abet oneself. *See*

*United States v. Teffera,* 985 F.2d 1082, 1086 n. 3 (D.C.Cir.1993) (One element of aiding and abetting is "commission of the substantive offense by someone else."). Although this will be unlikely to affect his sentence (because we are upholding Mr. Verners's conviction on the underlying offense), we nevertheless are remanding to the district court for possible resentencing.

3. This statute has survived at least three challenges for being unconstitutionally vague. *See United States v. Lancaster,* 968 F.2d 1250, 1253–54 (D.C.Cir.1992); *United States v. Clavis,* 956

where the "place" in question is a residence, the defendant must have a "substantial connection" to the home and must be more than a "casual visitor" in order to satisfy this element. 923 F.2d at 1403. Where the defendant lives in the house, this element is normally easily proved. *Onick,* 889 F.2d at 1431. However, the question of what constitutes "knowingly maintaining" becomes more complicated when the defendant does not reside where the drugs are. This question has been considered by the Eleventh Circuit.

> Acts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying the food to those at the site, and continuity are, of course, evidence of knowingly maintaining the place considered alone or in combination with evidence of distributing from that place.

*United States v. Clavis,* 956 F.2d 1079, 1091 (11th Cir.), *cert. denied sub nom., Edwards v. United States,* 504 U.S. 990, 112 S.Ct. 2979, 119 L.Ed.2d 597 (1992). In this case, Mrs. Verners lived at the residence continuously for a long period and clearly exercised dominion and control over it. Although she did not pay rent (the house was owned by her ex-husband), she had phone service under her name and she had arranged to put an addition on the house. Thus, she definitely knowingly maintained the place.

Laroan Verners also exercised dominion and control over the house, or at least over his bedroom. He had lived there and continued to use the bedroom to store many of his personal belongings and business-related items. He had a key to the house and came and went as he pleased. He was far from a casual visitor. His actions also fit within the meaning of the word "maintain."

▌ The more complex question is whether, as the government contends, Laroan and Guessinia Verners maintained this residence "for the purpose of" manufacturing cocaine base. While we have yet to address this issue, our fellow circuits have examined in this context the contours of the term "for

the purpose of." In *United States v. Chen,* 913 F.2d 183 (5th Cir.1990), the Fifth Circuit held that "purpose" was synonymous with "objective," "intention," and "aim." *Id.* at 189–90. Furthermore, to be convicted under 856(a)(1), the defendant must personally have the "specific purpose"; it is not "sufficient for others to possess it." *Id.* However, the purpose of manufacturing cocaine need not be the sole purpose for which the "place" is used. "Had Congress intended convictions under § 856 to be limited to those who open or maintain facilities having cocaine manufacturing as their sole purpose, it would have said so. Such a narrow construction ... would eviscerate the statute...." *United States v. Roberts,* 913 F.2d 211, 220 (5th Cir.1990), *cert. denied sub nom., Preston v. United States,* 500 U.S. 955, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991). On the other hand, manufacturing, distributing, or using drugs must be more than a mere collateral purpose of the residence. Thus, "[t]he casual' drug user does not run afoul of this prohibition because he does not maintain his house for the purpose of using drugs but rather for the purpose of residence, the consumption of drugs therein being merely incidental to that purpose." *United States v. Lancaster,* 968 F.2d 1250, 1253 (D.C.Cir.1992). We think it is fair to say, at least in the residential context, that the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put.

▌ The Seventh Circuit has drawn upon a business analogy to interpret the term "for the purpose of" within the context of § 856(a)(1). In the recent case of *United States v. Banks,* 987 F.2d 463 (7th Cir.1993), that court held "one way to tell whether a defendant had the requisite mental purpose under (a)(1) is to decide whether he acted as a supervisor, manager, or entrepreneur" in the drug enterprise, as opposed to someone who merely "facilitated the crime." *Id.* at 466–67. We agree that the "crack-house" statute was designed to punish those who use their property to run drug businesses—hence, the more characteristics of a business that are present, the more likely it is that the

---

F.2d 1079, 1094 (11th Cir.), *cert. denied sub nom., Edwards v. United States,* 504 U.S. 990, 112 S.Ct. 2979, 119 L.Ed.2d 597 (1992); *United*

*States v. Milani,* 739 F.Supp. 216, 217–18 (S.D.N.Y.1990).

property is being used "for the purpose of" those drug activities prohibited by § 856(a)(1). Evidence that a place is being used to run such a business might include: investment in the tools of the trade (*e.g.,* laboratory equipment, scales, guns and ammunition to protect the inventory and profits); packaging materials (baggies, vials, gelcaps, etc.); financial records; profits (either in the form of cash or in expensive merchandise); and the presence of multiple employees or customers.

Under either of these tests, the government has provided sufficient evidence against Laroan Verners and insufficient evidence against Guessinia Verners. Because Mr. Verners was apparently not sleeping at the house, it appears that one of his primary purposes in maintaining his place in the home was as a base of operations to run a drug manufacturing and distributing business. The vast majority of the equipment, records, and money associated with the drug enterprise were found in the room which was under his control, indicating that he was the "manager" of the enterprise.

In contrast, there is no evidence that Guessinia Verners occupied more than a minor role in the home-based drug business of her son. That is not to say that she may not, in fact, have actively taken part in the business. We find, however, that the evidence presented supports the conclusion that her primary purpose in maintaining the house was as a home for herself and her two daughters. There is no evidence that she used Laroan Verners's bedroom or was aware of its contents. There is no evidence that she "managed" or "supervised" her son's business. No rational jury could conclude beyond a reasonable doubt that she had the requisite mental purpose for conviction under this statute.[4]

The government has provided barely sufficient evidence to convict Laroan Verners

of the use of a gun in relation to a drug offense. To prove a violation of 18 U.S.C. § 924(c), the government must demonstrate that the defendant "use[d]" or "carrie[d]" a firearm "during and in relation to" a drug trafficking crime. *United States v. Nicholson,* 983 F.2d 983, 990 (10th Cir.1993).

The government concedes that Laroan Verners did not actually use (in the sense of fire or brandish) or physically carry the guns in this case, but argues that the proximity of the guns to the money and drug paraphernalia satisfies the "ready access" test set forth in *United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989). Although this case is clearly at the outer parameters of conduct punishable under this statute, we are unable to discern any basis for distinguishing this case from *United States v. Hager,* 969 F.2d 883 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992), where this circuit upheld a conviction under this statute on equally marginal evidence.

The district court did not abuse its discretion in failing to grant Mrs. Verners's motion for a separate trial. *United States v. Hayes,* 861 F.2d 1225, 1231 (10th Cir.1988). To be entitled to severance, a defendant must make "a strong showing of prejudice." *United States v. Esch,* 832 F.2d 531, 537 (10th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988). In other words, she "must show that failure to sever resulted in the denial of [her] right to a fair trial." *United States v. Peveto,* 881 F.2d 844, 857 (10th Cir.1989) (citations omitted). Mrs. Verners has failed to show that her and Laroan Verners's defenses were "so antagonistic that they are mutually exclusive." *Esch,* 832 F.2d at 538.

The district court's calculations of the amount of cocaine involved for the purposes of determining the appropriate sentencing guideline are not clearly erroneous. The government showed by a preponderance

---

4. Congress did intend to punish those who knowingly allow others to use their property to run drug operations. However, this intent is expressed in 21 U.S.C. § 856(a)(2), not (a)(1). We do not mean to second-guess the prosecutor's judgment, but merely suggest that Mrs. Verners might have been more easily convicted under 856(a)(2), which prohibits those who "control any building, room, or enclosure" from

"mak[ing] available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." On the difference between 856(a)(1) and (a)(2), *see generally United States v. Chen,* 913 F.2d 183 (5th Cir.1990); *United States v. Banks,* 987 F.2d 463 (7th Cir.1993).

of the evidence that Laroan Verners's notations were records of drug sales. The court's calculations based on these notes and the amount of cash found, plus the actual drugs recovered, are also supported by a preponderance of the evidence. *United States v. Cody,* 7 F.3d 1523, 1527 (10th Cir.1993). These findings of the district court are therefore affirmed.

Laroan Verners's convictions for possession with intent to distribute, maintaining a place for the purpose of manufacturing cocaine, and use of a gun in the course of a drug trafficking crime are AFFIRMED, except that his conviction for aiding and abetting is REVERSED. We AFFIRM the district court's calculations of the amount of cocaine for sentencing guideline purposes.

Guessinia Verners's convictions for possession with intent to distribute, committing a drug offense near a school, and maintaining a place for the purpose of manufacturing cocaine are REVERSED. Her conviction for aiding and abetting possession with intent to distribute is AFFIRMED.

Accordingly, these cases are REMANDED for resentencing consistent with this opinion.