F I L E D
United States Court of Appeals
Tenth Circuit

MAY 26 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

GUESSINIA VERNERS aka Guessinia
Holland,

        Defendant - Appellant.

No. 98-5144

(N.D. Oklahoma)

(D.C. No. CV-97-1126-C)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Guessinia Verners seeks a certificate of appealability (COA) in order to appeal the district court's denial of her 28 U.S.C. § 2255 motion to vacate, set aside or correct her sentence. Because Verners has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we deny her request for a COA and dismiss the appeal.

Following a jury trial, Verners and her codefendant/son were convicted of possession of cocaine base with intent to distribute, maintaining an establishment for manufacturing drugs, and aiding and abetting each other in the commission of those crimes, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 856(a)(1), and 18 U.S.C. § 2. Verners was sentenced to 151 months' imprisonment. On direct appeal we reversed all her convictions except the conviction for aiding and abetting her son's distribution offense. United States v. Verners, 53 F.3d 291 (10th Cir. 1995). After remand, she was resentenced to 120 months' imprisonment. We affirmed that sentence in United States v. Verners, 103 F.3d 108 (10th Cir. 1996). Verners then brought the present § 2255 motion, claiming that her counsel did not properly advise her regarding the factors involved in his recommendation to move for a mistrial following the removal and replacement of one of the jurors.[1]

_____

[1]Verners' codefendant/son brought a similar motion based on the alleged jury contamination, and he also sought to appeal the district court's denial. We
(continued...)

-2-

According to the record, shortly after the jury retired with instructions to begin its deliberations, the court received a note from the jury foreman. The note stated as follows: "Before deliberations start [Juror] Burden wishes to be excused due to relatively close neighborhood proximity and the fact that he recognizes the defendants." R. Tab 146, Ex. C at 421. The court informed both defense counsel about the note, and each spoke with his client about the situation. Id., Ex. C at 422-23. After their consultations, each counsel indicated his client's preference: Ms. Verners had no objection to excusing Mr. Burden. However, her son objected to excusing Mr. Burden.[2] Id., Ex. C at 423. The court then privately interviewed Mr. Burden, who indicated that he recognized Verners from a neighborhood store, and he claimed that his impartiality would be affected because of fear for his family. Id., Ex. C at 426-27. Next, the court met with the attorneys and played them the tape of the interview. Both attorneys expressed concern that Mr. Burden might have communicated his fear to the remaining jurors, and that the jury might therefore be contaminated. Id., Ex. C at 428. The

---

[1](...continued)
have filed our Order and Judgment in that matter simultaneously with our decision in this matter. See United States v. Verners, No. 98-5044, slip op. (10th Cir. May 26, 1999). Because the factual circumstances and legal analysis is generally the same on this issue, the two decisions employ several identical passages.

[2]Mr. Burden was the only African-American on the jury, and the Verners are African-American. R. Tab 146, Ex. C at 427-28.

-3-

court conducted another private interview in which Mr. Burden indicated that he had told the other jurors about his fear.  Id., Ex. C at 431.

The record reveals that both attorneys advised the court that they believed it to be in the best interests of their clients to move for a mistrial.  However, they asked to confer with their clients regarding the matter.  Id., Ex. C at 432. Obviously, the record does not contain any transcript of the actual attorney client conferences, but immediately following the conferences, Verners' counsel represented that he had fully explained the problem to her:[3]

> Judge, I have also communicated the fact that Mr. Burden has communicated his fear to the rest of the jurors about continuing his service, and I have expressed to her my concern that that might have contaminated the jury and affected in a negative way their deliberation process regarding her aspect of the trial.  She initially indicated that she would do what I wanted her to do, if I thought a mistrial was something that we should do, okay.  She then went and conferred in the Marshal's Office with her son and she came out with a different attitude, that she didn't want to delay this process any further, that she wanted to proceed to a verdict, and whatever was going to be done was going to be done.
>
> . . . .
>
> I have advised her that I thought it was best that we move for a mistrial, but she instructed me not to.

Id., Ex. C at 434.

---

[3]Verners was not present when counsel made this representation to the court.

After hearing a similar representation from codefendant's counsel, the court removed the juror and replaced him with an alternate. Then, in open court, with Verners present, the court inquired of the jury whether

> anything occurred . . . that might in any way affect your ability to be impartial jurors in your deliberations in this case? In other words, has anything occurred that might—any information conveyed to you that might affect your deliberative processes? Any of you have anything at all? Nothing has occurred?
>
> Now, from the time you left this courtroom after the Court instructed you to start your deliberations until this time, nothing has occurred that in any way would affect your deliberations; is that correct?

Id., Ex. C at 439. Thereafter, at the request of both defense attorneys, the court specifically questioned both defendants as to their desire to continue with trial. Both indicated that they wished to proceed with trial, and that they did not wish their attorneys to move for a mistrial. Id. at 441.

Verners now claims that her attorney never informed her that Mr. Burden was fearful for his family, and that Mr. Burden had relayed his fears to the remaining the jurors. She claims that the failure to properly inform her constituted ineffectiveness.[4] Moreover, she claims that the failure to seek a

---

[4]Verners does not claim that her counsel failed to recommend a mistrial motion. Rather, Verners argues that her decision not to follow counsel's advice, which she characterizes as a "waiver" of the mistrial motion, was not knowing, intelligent, and voluntary, and she cites Moore v. Michigan, 355 U.S. 155, 161 (1957) (holding that the waiver of counsel must be knowing, intelligent, and

(continued...)

proper corrective instruction constituted ineffectiveness. She also claims that appellate counsel was ineffective for failing to raise these issues on direct appeal. Finally, Verners contends that the district court erred by failing to hold an evidentiary hearing where she could have testified that her counsel "only told Appellant that Mr. Burden was afraid and that was the extent of counsel's information to Appellant."[5] Appellant's Br. at 10.

To establish a claim of ineffective assistance of counsel, Verners must show (1) that counsel committed errors so serious that she did not receive the counsel guaranteed by the Sixth Amendment, and (2) that counsel's performance was so deficient that she did not receive a fair trial. See Strickland v.

---

[4](...continued)
voluntary). We do not interpret Moore to apply to an otherwise competent defendant's choice not to follow her counsel's clear advice, and Verners cites no authority in support of such an extension.

Moreover, Verners' conclusory claims are somewhat contradictory. Although her initial complaint is that she was not fully informed, she also complains that she was unequipped to properly interpret the information, and that her counsel should not have allowed her son to influence her decision. Appellant's Br. at 18.

[5]We note that an affidavit filed by Verners' codefendant/son in a related appeal indicates that, when he and his mother spoke at the time the juror was removed, his mother stated that she did not remember seeing the juror around the neighborhood, and she also asked her son if his counsel had told him that the juror was "scared." See United States v. Verners, No. 98-5044, Appellant's Br. Ex. 5, Ex. 5 at 31-32. This recitation, which demonstrates Ms. Verners' appreciation of the fact that the juror claimed to live in her neighborhood, contradicts Ms. Verner's assertion of a more limited understanding.

-6-

Washington, 466 U.S. 668, 687 (1984). Under the first prong of this standard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court must avoid the "distorting effects of hindsight." Id. at 689. Under the prejudice prong of the Strickland test, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Additionally, a § 2255 petitioner has a right to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. We review the district court's denial of an evidentiary hearing for abuse of discretion. See United States v. Whalen, 976 F.2d 1346, 1348 (10th Cir. 1992).

In this case, the record conclusively shows that, at the time of the complained-of events, Verners' counsel made statements to the court which indicated that he had fully advised his client, and the court clearly found those representations to be true. Moreover, under the circumstances, the court's examination of the remaining jurors was sufficient to cure any potential for error which might have been caused by the dismissed juror's communications. Further, in light of her representation in court that she did not wish a mistrial, Verners has made no showing of prejudice, nor has she made any showing that a new trial

would have obtained any different result. Accordingly, the court did not abuse its discretion when it refused to grant Verners an evidentiary hearing.

Finally, Verners complains that her appellate counsel was ineffective for failing to raise, on direct appeal, the above issues related to ineffectiveness of trial counsel. However, as the district court correctly observed, Verners failed to demonstrate ineffectiveness of trial counsel, and therefore, appellate counsel could not have been ineffective for failing to raise a meritless claim. Furthermore, we have previously noted that claims of ineffective assistance of counsel "should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995). Accordingly, appellate counsel could not have been ineffective for failing to raise the issue in direct appeal.

Because Verners has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we DENY her application for COA and DISMISS her appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge
