**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

　　v.

LAROAN F. VERNERS,

　　　　Defendant - Appellant.

No. 98-5044

(N.D. Oklahoma)

(D.C. No. CR-93-1-C)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

　　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.　See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).　The case is therefore ordered submitted without oral argument.

　　　　This case is before us on appeal for the third time.　Following a jury trial, Laroan F. Verners was convicted of possession of cocaine base with intent to

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distribute, maintaining an establishment for manufacturing drugs, aiding and abetting his codefendant/mother in the commission of those crimes, and use of a firearm during and in relation to a drug trafficking crime. In his first appeal, we affirmed all convictions, except for the aiding and abetting offense. United States v. Verners, 53 F.3d 291 (10th Cir. 1995) (Verners I). Following remand and resentencing, Verners brought a second direct appeal, and we affirmed the district court in an unpublished opinion. United States v. Verners, No. 95-5194, 1997 WL 183510 (10th Cir. Apr. 15, 1997).

Thereafter, Verners brought a pro se motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, contending that (1) he had received ineffective assistance of counsel in several respects, and (2) his 18 U.S.C. § 924(c) firearms conviction must be vacated in light of Bailey v. United States, 516 U.S. 137 (1995). The district court denied Verners' motion respecting the ineffectiveness of counsel claims, but it granted the motion regarding § 924(c). R. Vol. II, Tab 127. Accordingly, its order vacated the § 924(c) conviction and sentence and set the matter for resentencing. Id. Additionally, the court directed the Federal Public Defender to appoint an attorney to represent Verners at the related hearings. R. Vol. II, Tab 128.

Proceeding pro se, Verners sought to appeal the portion of the § 2255 motion which the district court denied (the ineffectiveness claims). At that time,

we determined we lacked jurisdiction over the appeal, reasoning that there was no final order until the district court accomplished its resentencing. R. Vol. III, Tab 142 (citing United States v. Mendoza, 118 F.3d 707 (10th Cir.), cert. denied, 118 S. Ct. 393 (1997), and noting that, in such cases, the district court's jurisdiction to resentence arises under § 2255). Therefore, we dismissed the appeal as premature, and we advised Verners to bring his appeal when the order became final following resentencing. Id.

Thereafter, at resentencing, the district court increased Verners' offense level pursuant to U.S.S.G. § 2D1.1(b)(1). Verners' appointed attorney filed a notice of appeal. Contending that his counsel had advised him that he would not include the ineffectiveness claims in his appeal, Verners filed a pro se motion seeking to have his counsel removed. As grounds, Verners cited our prior order and his concern that he could lose his right to appeal the district court's denial of his ineffectiveness claims unless those issues were joined with the appeal respecting resentencing. Additionally, he filed a brief on the merits of the ineffectiveness claims, and also sought leave to appear pro se to file a brief appealing the new sentence. Alternatively, he asked us to consider his § 2255 brief along with any counsel-prepared brief on sentencing. At about the same time, Verners' counsel moved to withdraw.

We granted counsel's motion to withdraw, denied Verners' application to proceed pro se, and, instead, appointed substitute counsel. United States v. Verners , No. 98-5044, slip op. (10th Cir. June 4, 1998). Substitute counsel has now filed a brief which does not include any of the ineffectiveness claims, and Verners has filed a new motion requesting us to consider his pro se brief. Under the circumstances, we grant Verners' motion. Accordingly, we have considered Verners' pro se brief on the ineffectiveness issues along with our consideration of his counsel's brief. [1] Cf. Anders v. California , 386 U.S. 738, 744 (1967) (allowing the defendant to separately raise points which counsel failed to raise).

## DISCUSSION

### I. The Resentencing

In the appeal of his sentencing, Verners contends that the district court erred in enhancing his base offense level for possession of a firearm.

We review the district court's factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error, giving due deference to the court's application of the guidelines to the facts. United States v. Vaziri , 164 F.3d 556, 568 (10th Cir.

---

[1]We also conclude that our consideration of Verners' current § 2255 claims does not bar consideration of any future § 2255 motion limited solely to issues related to the resentencing which we are addressing in this direct appeal, since any such issues would have been unavailable at the time Verners filed his original petition.

-4-

1999).  However, we review legal questions de novo.  Id.  Section 2D1.1(b)(1) requires the district court to increase a drug trafficker's base offense level by two points if "a dangerous weapon (including a firearm) was possessed."  The government has the initial burden of proving possession by a preponderance of the evidence.  Vaziri, 164 F.3d at 568.  That burden is satisfied if the government shows the weapon was possessed in proximity to the location of the drug offense.  Id.; see also United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998), cert. denied, 119 S. Ct. 849 (1999).  Moreover, constructive possession, i.e. ownership, dominion or control, is sufficient to support enhancement under § 2D1.1(b)(1).  See United States v. Payne, 81 F.3d 759, 762 (8th Cir. 1996).  Once the government meets its initial burden, the burden shifts to the defendant to prove that it is "clearly improbable" that the gun was connected to the offense.  United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993).

At the evidentiary hearing for the resentencing, the parties stipulated that the court could rely on the trial transcript.  As we set forth in Verners I, evidence at trial showed that "police found digital scales, razor blades, cut (a substance used to dilute the purity of cocaine), large amounts of cash, two handguns—one loaded, one unloaded—and ammunition" in Verners' bedroom.  Verners I, 53 F.3d at 293.  Additionally, in affirming his conviction for maintaining the house as a drug manufacturing establishment, we noted that "Laroan Verners also exercised

dominion and control over the house, or at least over his bedroom. He had lived there and continued to use the bedroom to store many of his personal belongings and business-related items." Id. at 296. Thus, Verners' bare contention that no evidence indicated that he exercised any control over the house or the weapons fails in light of that previous opinion. Even though no fingerprints were found on either gun, the evidence showed that Verners "plainly continued to exercise dominion and control over his bedroom" where the guns and some of the drug-related items were found. Id. at 294. Such evidence satisfies the proximity and possession test required to support a § 2D1.1(b)(1) enhancement. Accordingly, we find no error in the district court's imposition of the enhancement.

## II. Ineffectiveness Issues

We treat Verners' motion and brief as an application for a certificate of appealability (COA). Verners claims his counsel was ineffective in the following respects: (1) he had a conflict of interest; (2) he failed to move to suppress the evidence seized when officers executed their search warrant at his mother's house; and (3) he did not properly advise Verners regarding the factors involved in his recommendation to move for a mistrial following the removal and

replacement of one of the jurors. [2] He also claims that appellate counsel was ineffective for failing to raise these issues on direct appeal.

To establish a claim of ineffective assistance of counsel, Verners must show (1) that counsel committed errors so serious that he did not receive the counsel guaranteed by the Sixth Amendment, and (2) that counsel's performance was so deficient that he did not receive a fair trial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the first prong of this standard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court must avoid the "distorting effects of hindsight." Id. at 689. Under the prejudice prong of the Strickland test, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Additionally, a § 2255 petitioner has a right to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. We review the district court's denial of an evidentiary hearing for abuse of discretion. See United States

---

[2]Verners' codefendant/mother brought a similar motion based on the alleged jury contamination, and she also sought to appeal the district court's denial of that motion. We have filed our Order and Judgment in that matter simultaneously with our decision in this matter. See United States v. Verners, No. 98-5144, slip op. (10th Cir. May 26, 1999). Because the factual circumstances and legal analysis are generally the same on this issue, the two decisions employ several identical passages.

v. Whalen , 976 F.2d 1346, 1348 (10th Cir. 1992).  Applying these standards, we consider each of Verners' claims in turn.

### A.  The Alleged Conflict

The record reveals that Verners' counsel advised the court of a possible conflict of interest which could come up during trial, based on counsel's review of a government affidavit which named two informants who were also counsel's clients or ex-clients.  Counsel was concerned that the government might call these persons as witnesses.  Appellant's Br., Ex. 5, Ex. 4. at 56-60.  In light of counsel's concern, the government represented that it had no present intention to call the two, and the court indicated that it would consider an appropriate response if the government changed its mind.        Id., Ex. 4 at 63-65.  In fact, neither informant was called as a witness.       Nonetheless, Verners indicates that he was disabled from calling the two as defense witnesses.  However, he makes no showing of any exculpatory testimony which they would have given.  Accordingly, we agree with the district court's conclusion that Verners has failed to show any prejudice resulting from the alleged conflict.

**B. The Search Warrant**

In this claim, Verners contradicts his earlier direct appeal claims that he had no control or dominion over his mother's house where the offense evidence was found. Now, he claims that he did exercise dominion and control, and that his counsel should have moved to suppress the evidence. However, he cites no infirmity in the warrant or in the procedures used by the officers. Thus, he has shown no prejudice.

**C. The Alleged Jury Contamination**

According to the record, shortly after the jury retired with instructions to begin its deliberations, the court received a note from the jury foreman. The note stated as follows: "Before deliberations start [Juror] Burden wishes to be excused due to relatively close neighborhood proximity and the fact that he recognizes the defendants." Appellant's Br., Ex. 5, Ex. 4 at 421. The court informed Verners' counsel about the note, and after conferring with Verners, counsel informed the court that Verners objected to excusing Mr. Burden. [3] Id., Ex. 4 at 423.

---

[3]Mr. Burden was the only African-American on the jury, and the Verners are African-American. Appellant's Br., Ex. 5, Ex. 4 at 427-28. Verners' affidavits filed in conjunction with his § 2255 motion confirm that he wanted Burden to remain on the jury since Verners felt that a black juror would be more sympathetic to him. Id., Ex. 5 at 27.

The court then privately interviewed Mr. Burden who stated that he recognized Verners' mother from a neighborhood store, and he claimed that his impartiality would be affected because of fear for his family.     Id., Ex. 4 at 426-27. Next, the court met with the attorneys and played the tape of the interview. Both defense attorneys expressed concern that Mr. Burden might have communicated his fear to the remaining jurors, and that the jury might therefore be contaminated. Id., Ex. 4 at 428. The court conducted another private interview in which Mr. Burden indicated that he had told the other jurors about his fear.     Id., Ex. 4 at 431.

The record reveals that both attorneys advised the court that they believed it to be in the best interests of their clients to move for a mistrial. However, they asked to confer with their clients regarding the matter.     Id., Ex. 4 at 432. Obviously, the record does not contain any transcript of the actual attorney client conferences, but immediately following the conferences, Verners' counsel represented that he had fully explained the problem to him.     [4]

> If the Court please, I have conferred with my client. It is my client's specific instruction that he wishes the case to proceed to a jury verdict and that he instructs me not to move for a mistrial. I would like the record to reflect in the exercise of my best professional judgment, I think it is absolutely a mistake. I think his best interests dictate a mistrial for obvious reasons at this point in

---

[4]Verners was not present when counsel made this representation to the court.

time, most of which should be apparent from the record earlier made.[5]

> I have advised him that I think this is a mistake. I have advised him that he is the client and I work for him and it's his call to make. It is my belief he understands the significance of the issue and the exposure.

Id., Ex. 4 at 433 (footnote added).

Additionally, Verners' own affidavit indicates that his counsel clearly recommended making a motion for a mistrial, and that counsel informed him of his immediate exposure to a lengthy prison sentence. Moreover, the affidavit states that after Verners rejected his counsel's advice, his counsel repeated his belief that Verners was making a mistake by not permitting him to move for a mistrial. Id., Ex. 5 at 31-32.

In light of the statements from counsel, the court removed the juror and replaced him with an alternate. Then, in open court, with Verners present, the court inquired of the jury whether

> anything occurred . . . that might in any way affect your ability to be impartial jurors in your deliberations in this case? In other words, has anything occurred that might—any information conveyed to you that might affect your deliberative processes? Any of you have anything at all? Nothing has occurred?

---

[5]The earlier record demonstrates counsel's express concern that Mr. Burden may have "telegraphed [his] fear to the jury." Appellant's Br., Ex. 5, Ex. 4 at 428.

Now, from the time you left this courtroom after the Court instructed you to start your deliberations until this time, nothing has occurred that in any way would affect your deliberations; is that correct?

Id., Ex. 4 at 439. Thereafter, at the request of both defense attorneys, the court specifically questioned both defendants as to their desire to continue with trial. Both indicated that they wished to proceed with trial, and that they did not wish their attorneys to move for a mistrial.     Id., Ex. 4 at 441.

Verners now claims that his attorney never informed him that Mr. Burden was fearful for his family, and that Mr. Burden had relayed those fears to the remaining jurors. He claims that the failure to properly inform him constituted ineffectiveness. [6] Moreover, he claims that the failure to seek a proper corrective instruction constituted ineffectiveness.

In this case, the record conclusively shows that, at the time of the complained-of events, Verners' counsel made statements to the court which indicated that he had fully advised his client, and the court clearly found those representations to be true. Moreover, even if his counsel's advice was only as

---

[6]As noted, Verners does not claim that his counsel failed to recommend a mistrial motion. Nonetheless, Verners argues that his decision not to follow counsel's advice, which he characterizes as a "waiver" of the mistrial motion, was not knowing, intelligent, and voluntary, and he cites Moore v. Michigan, 355 U.S. 155, 161 (1957) (holding that the waiver of counsel must be knowing, intelligent, and voluntary). We do not interpret Moore to apply to an otherwise competent defendant's choice not to follow his counsel's clear advice, and Verners has cited no authority in support of such an extension.

-12-

Verners recites in his affidavits, that advice, with its repeated urging to allow the motion for a mistrial, is not deficient under the Strickland standard. Additionally, under the circumstances, the court's examination of the remaining jurors was sufficient to cure any potential for error which might have been caused by the dismissed juror's communications. Further, in light of his representation in court that he did not wish a mistrial, Verners has made no showing of prejudice, nor has he made any showing that a new trial would have obtained any different result. Accordingly, the court did not abuse its discretion when it refused to grant Verners an evidentiary hearing.

### D. Appellate Counsel

Finally, Verners complains that his appellate counsel was ineffective for failing to raise, on direct appeal, the above issues related to ineffectiveness of trial counsel. However, as the district court correctly observed, Verners failed to demonstrate ineffectiveness of trial counsel, and therefore, appellate counsel could not have been ineffective for failing to raise these meritless claims. Furthermore, we have previously noted that claims of ineffective assistance of counsel "should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir.

1995).  Accordingly, appellate counsel could not have been ineffective for failing to raise the issue in direct appeal.

**CONCLUSION**

As to the claims related to Verners' resentencing, we AFFIRM the district court.  As to the claims of ineffectiveness, because Verners has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we DENY his application for a COA and DISMISS that portion of the appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge