**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 21, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT EUGENE CONNER,

    Defendant - Appellant.

No. 04-5128
(D.C. No. CR-03-168-1-P)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

Defendant-Appellant Robert E. Conner, Jr., appeals from his conviction and sentence for knowingly maintaining a place for the purpose of manufacturing, distributing, or using a controlled substance, 21 U.S.C. § 856(a)(1) and (b)(1). He was sentenced to 97 months imprisonment followed by three years of supervised release. On appeal, he challenges (1) the denial of his motion for a judgement of acquittal based on the sufficiency of evidence, (2) the admission

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

into evidence guns found in his home, and (3) the district court's finding of facts and use of the United States Sentencing Guidelines when calculating his sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 28 U.S.C. § 3742(a), and we affirm the conviction but remand for resentencing.

Background

A confidential informant first alerted Tulsa Police Officer Brian Comfort of suspected drug dealing at a home located at 9765 East Fifth Street in Tulsa, Oklahoma. For approximately four days, the officer conducted surveillance of the home and witnessed 15 to 20 short-term visitors, suggesting short-term drug traffic. The morning of September 4, 2003, a search warrant was executed on the home.

Entering the home, Officer Comfort smelled strong chemical odors which he immediately associated with a methamphetamine lab. The odor grew stronger as he approached and entered the garage. Other officers present at the time of the search confirmed the presence of a strong chemical odor which they associated with a methamphetamine lab. Shortly after entering the home, police officers apprehended Mr. Conner, an 18 month occupant of the home.

Searching the kitchen and garage, police discovered methamphetamine production equipment, precursor chemicals, and other ingredients commonly used

to manufacture methamphetamine.

A search of Mr. Conner's bedroom produced a bag containing marijuana, drug paraphernalia, and a 2000 milliliter Pyrex round-bottom flask. In Mr. Conner's bedroom closet, police found a loaded 16-gauge pistol-gripped shotgun, a loaded .22-caliber semi-automatic rifle with a scope, a 9mm semi-automatic pistol, and ammunition.

A search of the bedroom associated with Daniel Wright, Mr. Conner's roommate of approximately six weeks, produced a marijuana cigarette, pseudoephedrine pills in a bottle, drug notations, and eight guns.

At trial, Officer Comfort and Tulsa Police Sgt. Harold Adair testified that taking the evidence as a whole, a methamphetamine lab existed at the residence. They also testified that the quantity of methamphetamine mixture seized, 44.50 grams, in combination with the presence of scales and baggies, indicated methamphetamine distribution, rather than personal use. Both officers have extensive training and field experience in the investigation of clandestine methamphetamine labs.

## Discussion

A. Sufficiency of the Evidence

Mr. Conner moved for a judgment of acquittal after the close of the

government's evidence and after the close of all the evidence. Fed. R. Crim. P. 29. The district court denied both motions. After the guilty verdict, Mr. Conner unsuccessfully renewed his motion.

A motion for judgment of acquittal effectively challenges the sufficiency of the evidence. In reviewing the evidence, our review is de novo and we ask only whether, taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. United States v. Scull, 321 F.3d 1270, 1282 (10th Cir. 2003). We neither weigh conflicting evidence, nor consider the credibility of witnesses. United States v. Shepard, 396 F.3d 1116, 1119 (10th Cir. 2005). Our task is to determine whether the evidence, if believed, would establish each element of the crime. Id. We may overturn a jury verdict only if no reasonable juror could have reached such a verdict. Id.

In order to convict Mr. Conner under 21 U.S.C. § 865(a)(1), the government was required to prove beyond a reasonable doubt that he knowingly opened or maintained a place for the purpose of manufacturing, distributing, or using a controlled substance. Scull, 321 F.3d at 1284. Sufficient evidence exists to support the conviction.

The government provided sufficient evidence to support the knowingly

"maintained a place" element of the statute. Where the "place" in question is a residence, the defendant must have a "substantial connection" to the home and must be more than a "casual visitor." United States v. Verners, 53 F.3d 291, 296 (10th Cir. 1995). When the defendant lives in the house, this element is normally easily proved. Id. Although Mr. Conner did not own this home, he lived there continuously for 18 months and clearly exercised dominion and control over it. Thus, he knowingly maintained a place within the meaning of the statute.

In Verners, this court addressed what constitutes "for the purpose of" within the context of the statute. We concluded that, at least in the residential context, the manufacture, distribution or use of drugs must be at least one of the primary or principal uses to which the house is put. Id. We drew upon the business analogy test developed by the Seventh Circuit, in United States v. Banks, 987 F.2d 463 (7th Cir. 1993), to further interpret "for the purpose of:"

> [T]he more characteristics of a business that are present, the more likely it is that the property is being used "for the purpose of" those drugs prohibited by § 865(a)(1). Evidence that a place is being used to run such a business might include: investment in the tools of the trade (e.g., laboratory equipment, scales, guns and ammunition to protect the inventory and profits); packaging materials (baggies, vials, gelcaps, etc.); financial records; profits (either in the form of cash or in expensive merchandise); and the presence of multiple employees or customers.

53 F.3d at 296-97. We made clear that the defendant must personally have the specific purpose to maintain a place for manufacturing, distributing, or using a

controlled substance; it is not sufficient for others to possess it. Id. at 297-98. "[O]ne way to tell whether a defendant had the requisite mental purpose under (a)(1) is to decide whether he acted as a supervisor, manager, or entrepreneur in the drug enterprise, as opposed to someone who merely facilitated the crime." Id. at 296 (citing Banks, 987 F.2d at 466-67) (internal quotations omitted).

The government provided sufficient evidence that Mr. Conner's residence was being used to run a methamphetamine manufacturing and distributing business. Officer Comfort and Sgt. Adair testified that tools of this trade were discovered throughout the house. An abundance of methamphetamine manufacturing equipment, precursor chemicals, and other necessary ingredients were found throughout the kitchen and garage. Guns and ammunition were discovered in the bedrooms of Mr. Conner and Mr. Wright. Scales and packaging materials in the form of small, clear zip-lock baggies were also found.

Although no customers were present when the police searched Mr. Conner's home, trial testimony established the existence of a customer base. Officer Comfort testified that during his surveillance of Mr. Conner's home, he witnessed 15 to 20 short-term visitors, which based on his experience and training, were indicative of the sale of drugs at the residence. Three witnesses also testified that they visited Mr. Conner's home where they used or purchased drugs. Moreover, Sgt. Adair and Officer Comfort testified that the quantity of

methamphetamine mixture seized from the kitchen, 44.50 grams, in combination with the presence of scales and baggies, indicated it was being used for distribution, rather than personal use.

The government also provided sufficient evidence that Mr. Conner personally had the specific purpose to maintain his home for manufacturing and distributing methamphetamine. Adam Tanner testified that in the summer of 2003, he went to Mr. Conner's residence and sold him one and a half pounds of phosphorous acid flakes, a precursor chemical used to manufacture methamphetamine. Approximately one week before police searched the residence, Mr. Tanner returned to Mr. Conner's residence with a one pound bag of flakes which he sold to both Mr. Conner and Mr. Wright. Heather Coats also testified that Mr. Conner provided her and her friends methamphetamine during their visits to his home. In addition, Mr. Conner maintained three firearms in close proximity to these activities. Taken together, this evidence permits the inference that Mr. Conner was an "entrepreneur" in the methamphetamine manufacturing and distributing business, not a mere facilitator, and that he personally maintained his residence for such purposes. Cf. Verners, 53 F.3d at 297 (overturing the conviction of a mother under § 865(a)(1), who resided in a residence with her drug dealing son, because the government failed to provide evidence she occupied more than a minor role as a facilitator in her son's drug

business).

Mr. Conner argues that a business analogy is wanting due to a lack of present employees or customers, financial records concerning distribution, and sums of cash showing sales, and no evidence of multiple employees or customers. Aplt. Br. at 14. For several reasons, we cannot accept this contention. First, as noted, the government provided evidence of a customer base. The absence of individual customers or employees in the residence during the *morning* police search does little to cast doubt on that evidence. Second, establishing the business analogy employed in Verners does not require the presence of every business characteristic provided therein. See id. at 297. Nor is the list of examples provided exhaustive. Id. Rather, we explained that "the more characteristics of a business that are present, the more likely it is that the property is being used 'for the purpose of' those drugs prohibited by § 865(a)(1)." Id. at 296-97.

B. Admission of Guns Found in the Home

Mr. Conner objected to the admission of the guns recovered from his bedroom and Mr. Wright's bedroom on the grounds that they were not relevant to the crime charged in the indictment and their admission would be unfairly prejudicial. The district court overruled his objections and found that the evidence was admissible under Fed. R. Evid. 404(b), and not unfairly prejudicial.

We review a district court's decision to admit evidence for abuse of discretion, U.S. v. Samaniego, 187 F.3d 1222, 1223 (10th Cir. 1999), and we can affirm if the evidence was admissible regardless of the reasoning given by the district court. U.S. v. Robinson, 978 F.2d 1554, 1562 (10th Cir. 1992). While we are somewhat dubious as to whether possession of loaded firearms constitutes 404(b) evidence, there can be little question that the guns were admissible in the context of this case to prove the crime charged. We have held on several occasions that the presence of loaded weapons, especially in close proximity to drugs and/or drug paraphernalia, is probative as "tools of the trade." See United States v. Becker, 230 F.3d 1224, 1231 (10th Cir. 2000); see also Verners, 53 F.3d at 297 (in the context of the business analogy discussed supra, "[e]vidence that a place is being used to run such a business might include . . . guns and ammunition to protect the inventory and profits"). Drug dealers may, in fact, carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers. United States v. Nicholson, 983 F.2d 983, 990 (10th Cir. 1993). Officer Comfort, in fact, testified that methamphetamine manufacturers, distributors, and users possess guns for the same reasons. Therefore, evidence that Mr. Conner and Mr. Wright possessed loaded guns in close proximity to drugs and drug paraphernalia was relevant under Rule 401 because, insofar as guns are used by persons in the drug trade, it supports the inference that Mr.

Conner personally had the specific purpose to maintain his residence for manufacturing, distributing, or using methamphetamine.

We also conclude that the district court did not abuse its discretion in ruling that the evidence of the guns was not unfairly prejudicial. We have held that:

> In the Rule 403 context . . . evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged. Even if this type of prejudice is found, it must substantially outweigh the probative value of the evidence in order to be excluded under Rule 403.

Tan, 254 F.3d at 1211-12 (internal quotation marks and citations omitted) (italics in original). Rulings concerning admission of evidence based on its probative value versus prejudicial effect are within the sound discretion of the district court. United States v. Jones, 44 F.3d 860, 875 (10th Cir. 1995). Here, the district court concluded that the guns were relevant to an issue in the case, and that they would not adversely affect the jury's attitude towards the defendant, independent of guilt or innocence. Moreover, the district court gave a proper limiting instruction. Under these circumstances, no abuse of discretion has been shown.

C. Booker Issues

Based on the facts reflected in the jury verdict alone, the sentencing

range for Mr. Conner would have been between 12 and 18 months of incarceration. The district court enhanced his sentence based on facts it found by a preponderance of the evidence. First, the district court found that Mr. Conner was responsible for 44.50 grams of methamphetamine mixture and 8,640 milligrams of pseudoephedrine, raising his base offense level from 12 to 26.[1] U.S.S.G. § 2D1.1(c)(7). Second, the district court applied a two-point enhancement for possession of a firearm during the commission of a drug offense. Id. § 2D1.1(b)(1). With a criminal history category of II and a total offense level of 28, the applicable guideline range was 87 to 108 months.

At the sentencing hearing, Mr. Conner objected to the district court's application of the Sentencing Guidelines based on judicial fact-finding, contending that this was in violation of Blakely v. Washington, 542 U.S. 296 (2004). In accordance with settled law at the time, the district court overruled that objection, and entered a sentence in the middle of the guideline range, 97 months.

In United States v. Booker, --- U.S. ---, 125 S. Ct. 738 (2005), the

---

[1]The PSR relied upon by the district court arrived at the base offense level of 26 as follows: "[Mr.] Conner is responsible for 44.50 grams of methamphetamine mixture which converts to 89 kilograms of marijuana. He is also responsible for 8,640 milligrams of pseudoephedrine from full packages which converts to 86 kilograms of marijuana . . . Based on a total of 175 kilograms of marijuana equivalent, U.S.S.G. § 2D1.1(c)(7) provides a base offense level of 26." Second Revised PSR, dated July, 12 2004, ¶ 19.

Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756. To remedy this violation, the Court struck down those provisions of the Sentencing Reform Act that required mandatory application of the Sentencing Guidelines, instead requiring district courts to consult them in an advisory fashion. Id. at 756-57. Under Booker, therefore, the sentencing procedure in this case was clearly unconstitutional. The jury did not find, and the defendant did not admit, the facts on which the district court relied to enhance Mr. Conner's sentence.

The government concedes that Mr. Conner's timely Blakely objection adequately preserved his Booker argument, but it contends that the error was harmless. See Fed. R. Crim. P. 52(a); United States v. Riccardi, 405 F.3d 852, 874-75 (10th Cir. 2005) (applying harmless error analysis to a preserved constitutional Booker error). Fed. R. Crim. P. 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." In the context of a misapplication of the Guidelines under 18 U.S.C. § 3742(f)(1), the Supreme Court has held that "once the court of appeals has decided that the district court misapplied the Guidelines, a remand

is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 193, 203 (1992); Riccardi, 405 F.3d at 875. In harmless error cases, where the error was preserved, the government bears the burden of demonstrating that the substantial rights of the defendant were not affected. Riccardi, 405 F.3d at 875. In analyzing whether a preserved constitutional Booker error is harmless, we have considered various factors, including the strength of the evidence supporting the district court's factual findings and the likelihood that the district court would have imposed a less severe sentence had it known it had discretion. Id. at 875-76. Applying these standards, the government has not persuaded us that the error complained of was harmless.

The government's argument is that Mr. Conner's total offense level was supported by the evidence and resulted in a sentence in the middle of the sentencing range provided by the Sentencing Guidelines. Aplee Br. at 22-23. Although a sentence in the middle of the sentencing range suggests an exercise of discretion, we do not think that the government has carried its burden–its presentation does not demonstrate "overwhelming" evidence to support the district court's factual findings, cf. Riccardi, 405 F.3d at 875, nor does it "convince us beyond a reasonable doubt that the district court would have

imposed just as harsh a sentence in the absence of a mandatory guideline regime." See United States v. Wyndrix, 405 F.3d 1146, 1158 (10th Cir. 2005). Thus, Mr. Conner must be resentenced. We do pause, however, to note our particular concern with the district court's attribution of 8,640 milligrams of pseudoephedrine to Mr. Conner. Our review of the record reveals that evidence of this quantity was not presented during the trial and the issue was a subject of heated dispute in the sentencing hearing. Moreover, the evidence provided by the government at the sentencing hearing did not clearly indicate whether the calculation of the quantity of pseudoephedrine included the weight of the entire tablets or just the pseudoephedrine contained in the tablets. See U.S.S.G. § 2D1.1, comment. (n.10) (explaining that in a case involving pseudoephedrine, "use the weight of the . . . pseudoephedrine . . . contained in the tablets, not the weight of the entire tablets, in calculating the base offense level").

The conviction is AFFIRMED and the case is REMANDED for resentencing.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge