# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1542
_____

United States of America,

*Plaintiff - Appellee,*

v.

Patricio Renteria-Saldana,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 21, 2013
Filed: June 23, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Patricio Renteria-Saldana pleaded guilty to a charge of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] sentenced him to 210 months'

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

imprisonment, followed by five years of supervised release. Renteria-Saldana appeals, arguing that the district court committed procedural error in calculating the advisory sentencing guideline range. We affirm.

I.

After Renteria-Saldana pleaded guilty to the conspiracy charge, the district court was presented with a presentence investigation report that included some statements of fact to which Renteria-Saldana made no objection. The government also presented police reports concerning an investigation of Renteria-Saldana and others who were involved in the charged conspiracy. These sources are the basis for the factual information that underlies the disputed guidelines calculations.

Renteria-Saldana was arrested after a traffic stop in March 2012. During a search of Renteria-Saldana and his car, officers found methamphetamine, cash, and drug records. Renteria-Saldana admitted that he distributed methamphetamine for others who used a house at 1515 Dorcas Street in Omaha as a "stash house" where he picked up the drugs. Renteria-Saldana had a key to the stash house and granted officers permission to search the house.

During the search of the house on Dorcas Street, officers found 121 grams of methamphetamine in a clear plastic container under the floor beneath the sink cabinet in the kitchen. Under the sink, they also located a drug scale and a loaded nine-millimeter firearm. The search team discovered additional methamphetamine in a trash-bag box in the kitchen area and on a closet shelf in a bedroom. According to police reports, officers found an inflatable bed, but no clothes or furniture in the house. Officers also searched Renteria-Saldana's residence, where they seized drug records and $34,000 in cash.

Officers interviewed Renteria-Saldana after his arrest in March 2012 and provided the following written report, which was admitted into evidence at sentencing. Renteria-Saldana first claimed that a person named "Antonio" told him to pay the utility bills for the stash house, but later admitted that was not true. Instead, Renteria-Saldana acknowledged that he worked directly with two cousins who left for Mexico in early March and left Renteria-Saldana in charge of the stash house. Renteria-Saldana said that every two or three days someone named Francisco called and told him that drugs had been dropped off at the stash house, typically under the sink in a plastic storage bin. Francisco also called to alert Renteria-Saldana when someone was coming to the stash house to pick up money from Renteria-Saldana's drug sales.

The district court addressed two disputed issues under the sentencing guidelines. First, the district court found that Renteria-Saldana possessed a firearm and thus added two offense levels pursuant to USSG § 2D1.1(b)(1). The court found that Renteria-Saldana was in constructive possession of the loaded firearm that officers found under the kitchen sink in the stash house:

> He was using the stash house. He had the keys to it. As noted, he was paying the utilities for it. And whether or not he was under the direction of somebody up the chain of command in Mexico, the weapon was there, right with the scales and the drugs. And it was not clearly improbable that it was there to be used in connection with the drug dealing. So again, I find he was in possession of the weapon.

Second, the court found that Renteria-Saldana maintained the Dorcas Street house for the purpose of distributing a controlled substance, and thus added two offense levels pursuant to USSG § 2D1.1(b)(12):

> I find that he was operating his drug-dealing business from that stash house and he was maintaining that stash house. And he had the keys to

it and he paid the utilities for it. So whether or not he was getting directions from somebody else in Mexico, I find that that enhancement is proper.

The district court then sentenced Renteria-Saldana at the low end of the advisory-guidelines range to a term of 210 months in prison, to be followed by five years of supervised release. Renteria-Saldana appeals the sentence. We review the district court's findings of fact for clear error and its application of the guidelines *de novo*. *United States v. Anderson*, 618 F.3d 873, 879 (8th Cir. 2010).

II.

The sentencing guidelines provide for a two-level increase in offense level in a drug-trafficking case "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment. (n.11(A)). Thus, the government must show that "(1) the gun was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense." *Anderson*, 618 F.3d at 880. Actual or constructive possession is sufficient to satisfy the guideline. *Id.*

The district court found that Renteria-Saldana constructively possessed the firearm that was found under the sink at the Dorcas Street house. Constructive possession implies knowing possession, *see United States v. McCracken*, 110 F.3d 535, 541 (8th Cir. 1997), so assuming that knowledge was required, *cf. United States v. Fiala*, 929 F.2d 285, 289 (7th Cir. 1991), the finding of knowledge was not clearly erroneous. As one who possessed a key to the house and paid the utility bills, Renteria-Saldana had dominion over the area where the gun was found. He acknowledged that he regularly accessed the area beneath the sink to retrieve drugs. Firearms are tools of the drug trade, and it was reasonable to infer that Renteria-

-4-

Saldana knew about the loaded gun that was found in the same area as the drugs. *See United States v. Saddler*, 538 F.3d 879, 888-89 (8th Cir. 2008).

The evidence also supports the district court's finding that it was not clearly improbable that the weapon was connected with Renteria-Saldana's drug trafficking offense. The gun was not an unloaded hunting rifle in a closet, *see* USSG § 2D1.1, comment. (n.11(A)); it was a loaded handgun located in a stash house with the drugs that were delivered to Renteria-Saldana for resale. Whether or not Renteria-Saldana personally used the firearm, it was enough for the government to show that he knowingly possessed it and that it was connected to the drug trafficking offense. *United States v. Garcia*, 703 F.3d 471, 476 (8th Cir. 2013). The district court properly applied USSG § 2D1.1(b)(1).

The guidelines also provide that a defendant's offense level must be increased by two levels if he knowingly "maintained a premises for the purpose of manufacturing or distributing a controlled substance." USSG § 2D1.1(b)(12). In determining whether a defendant "maintained" a premises, the court should consider whether the defendant had a possessory interest in the premises and the extent to which the defendant controlled access to, or activities at, the premises. *Id*., comment. (n.17).

Although Renteria-Saldana did not own or reside at the Dorcas Street stash house, he exercised control over it and operated his drug-dealing business from the premises. A police report submitted at sentencing indicated that, according to Renteria-Saldana, two of his co-conspirators had recently left for Mexico and left him in charge. Renteria-Saldana had a key to the house and paid the utility bills. He regularly picked up drugs from the house and brought drug-sale proceeds to the premises for retrieval by other conspirators. There was no furniture or clothing in the house to suggest that it was used for anything other than drug trafficking. The record thus supports the finding that Renteria-Saldana maintained the house for the purpose

of distributing drugs.  The court properly applied the two-level specific offense characteristic.

*       *       *

The judgment of the district court is affirmed.

_____