[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11689
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-20777-MGC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CYNTHIA MORRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 16, 2020)

Before WILSON, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Cynthia Morris appeals her 18-month sentence for conspiracy to possess with intent to distribute cocaine base, cocaine, and marijuana and possession with intent to distribute cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C)-(D), and 846.  On appeal, Morris challenges the district court's application of guidelines enhancements under U.S.S.G. § 2D1.1(b) for possessing a dangerous weapon and for maintaining a premises for drug distribution.  After review, we affirm the district court's guidelines calculations and Morris's 18-month sentence.

## I.  DANGEROUS WEAPON ENHANCEMENT

Because Morris possessed a firearm in connection with her drug offenses, the district court did not err in applying a two-level increase in Morris's offense level under U.S.S.G. § 2D1.1(b)(1).[1]  The dangerous weapon increase in § 2D1.1(b)(1) applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1 cmt. n.11(A); see also United States v. George, 872 F.3d 1197, 1204 (11th Cir. 2017).  "The government bears the initial burden of showing, by a preponderance of the evidence, that the firearm was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of

---

[1]We review the district court's factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error, and its application of the Sentencing Guidelines to those facts de novo.  United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).

conviction." George, 871 F.3d at 1204. To that end, "the government must show that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Id. at 1204 (quotation marks omitted). This Court has held that "proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." United States v. Carillo-Ayala, 713 F.3d 82, 90-92 (11th Cir. 2013) (stating that the § 2D1.1(b)(1) dangerous weapon enhancement requires the government to show only "mere presence" of the firearm but "places a heavy burden of negation on the defendant"). If the government satisfies its initial burden, the burden shifts to the defendant to "establish that a connection between the weapon and the offense was 'clearly improbable.'" George, 872 F.3d at 1204 (quotation marks omitted).

Here, it is undisputed that: (1) Morris conducted two controlled sales of cocaine to a confidential informant outside of the one-bedroom residence she shared with her codefendant Kenneth Mayo; (2) law enforcement found a loaded firearm in a nightstand drawer in Morris's bedroom; (3) law enforcement also found within the bedroom crack and powder cocaine, marijuana, unused baggies, strainers, spoons, a digital scale, and $842 in U.S. currency; and (4) in a post-arrest interview, Morris admitted living in the residence with Mayo, selling drugs out of the residence, and holding the firearm for her son. In other words, Morris did not

3

contest that the loaded firearm was found in proximity to the drugs and drug-trafficking paraphernalia, which is sufficient to carry the government's initial burden.  See Carillo-Ayala, 713 F.3d at 91-92.

Further, Morris did not present evidence that it was clearly improbable the firearm was present in connection with her drug activity.  See George, 872 F.3d at 1204.  Morris points to her post-arrest statement that her son gave her the firearm to hold until he obtained a proper license to store it in his own home.  The original reason for the firearm's presence in her residence does not establish that it was clearly improbable that the firearm was subsequently being possessed in connection with her drug offenses.[2]

At sentencing, Morris acknowledged that she was "living a dangerous life" and "could have been shot" during her drug sales.  The firearm was kept fully loaded in a drawer in Morris's bedroom, plus Morris and Mayo also stored the drugs and drug-trafficking paraphernalia in that bedroom.  The firearm's accessibility and proximity to the drugs indicated the firearm's potential use in, and therefore its connection to, her drug dealing.  See United States v. Hall, 46 F.3d 62, 63-64 (11th Cir. 1995) (affirming application of the dangerous weapon

---

[2]We recognize that Morris cites United States v. Powell, 717 F. App'x 938 (11th Cir. 2017) (involving the dangerous weapons enhancement in § 2D1.1(b)(1)), but that decision does not help Morris.  Not only is Powell an unpublished decision, but the Court in Powell affirmed the district court's finding that the defendant constructively possessed the firearm found in his home.  See Powell, 717 F. App'x at 939-40.

enhancement where the firearm was found in a dresser drawer in the same room as scales, a Ziplock bag with cocaine residue, and a purse containing $12,000); see also United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (stating that a co-conspirator's possession of a firearm during a drug-trafficking conspiracy was reasonably foreseeable to the defendant because guns are a tool of the drug trade); United States v. Fields, 408 F.3d 1356, 1358-59 (11th Cir. 2005) (explaining that it was not "clearly improbable" that the two drug-trafficking co-conspirators who possessed firearms in their residences where they sold drugs "felt the need to protect their inventory and proceeds as well as themselves while they were engaging in that high risk activity").  The fact that the outside of Morris's home was the site of her drug sales further indicates the connection between the firearm and the drugs.

## II.  PREMISES ENHANCEMENT

The district court also did not err in applying the premises enhancement under U.S.S.G. § 2D1.1(b)(12).[3]  Under this guidelines provision, a defendant's offense level is increased by two levels "[i]f the defendant maintained a premises for the purposes of manufacturing or distributing a controlled substance."

---

[3]Whether a defendant "maintained" a premises for drug distribution is a finding of fact that this Court reviews for clear error, and, in doing so, we consider the totality of the circumstances.  George, 872 F.3d at 1205.  The district court's application of the facts to the guidelines enhancement is reviewed de novo.  Id. at 1204 n.6.

5

U.S.S.G. § 2D1.1(b)(12).  According to the commentary, the enhancement applies when the defendant "knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution."  Id. § 2D1.1 cmt. n.17.  The "[m]anufacturing or distributing . . . need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises," instead of an incidental or collateral use.  Id.  In determining the "primary purpose" of the premises, the sentencing court should consider how frequently the defendant used the premises for manufacturing or distributing a controlled substance and how frequently he used the premises for lawful purposes.  Id.  In determining whether the defendant "maintained" the premises, the court should consider, "[a]mong other factors," "whether the defendant held a possessory interest in (e.g., owned or rented) the premises" and "the extent to which the defendant controlled access to, or activities at, the premises."  Id.  This Court has held that "a premises can have more than one primary use, so long as the drug activity is more than incidental or collateral."  George, 872 F.3d at 1206 (quotation marks omitted).

Here, the district court's finding that Morris maintained her residence for drug distribution is not clearly erroneous.  The record shows that Morris conducted drug sales outside her residence and stored the drugs—38 grams of cocaine, 3.39

6

grams of cocaine base, and an amount of marijuana—and the materials needed to package the drugs for sale—baggies, spoons, strainers, and a digital scale—inside her residence. These facts are sufficient to support a finding that Morris maintained the residence for drug distribution. See id. at 1206.

While Morris argues that she did not own or personally pay rent or utilities for the residence, she does not dispute that she lived at the residence and that she had been selling drugs out of the residence. Indeed, at sentencing Morris's counsel stated that the house was owned by codefendant Mayo's mother, but that Morris had lived in the residence with Mayo "as a couple," "for about a year and a half," and that Morris cooked food, played dice, and entertained friends in the home. Morris's counsel also stated that Morris's two controlled sales to the confidential informant were conducted at the house, "hand-to-hand when the door opened."

Moreover, whether Morris had a "possessory interest" in the premises was just one of the factors the district court should have considered. See U.S.S.G. § 2D1.1, cmt. n.17; George, 872 F.3d at 1205 (reviewing the premises determination in light of the "totality of the circumstances"). We agree with other circuits that have concluded that the fact that the defendant's name is not on a lease or deed is not dispositive. See United States v. Thomas, 845 F.3d 824, 832 (7th Cir. 2017); United States v. Carter, 834 F.3d 259, 262-63 (3d Cir. 2016); United States v. Jones, 778 F.3d 375, 385 (1st Cir. 2015); United States v. Renteria-

7

Saldana, 755 F.3d 856, 859-60 (8th Cir. 2014).  That is especially true when, as here, it is undisputed that the defendant Morris lived in, and therefore had unfettered access to and control over, the premises.

Contrary to Morris's claim, the fact that she made only two controlled sales to the confidential informant outside her residence does not undermine the district court's finding.  See George, 872 F.3d at 1200, 1206 (affirming district court's finding that drug distribution was one of the primary purposes of the defendant's apartment, where he lived and where he made a single purchase of multiple pounds of marijuana, during which packaging materials, scales, heat-sealing equipment, and firearms were also present in the apartment).  This is particularly true here where law enforcement found a significant amount of drugs and drug-trafficking paraphernalia inside the home and Morris admitted she had been selling drugs from the home.

**AFFIRMED.**