# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-3259

———————————————

United States of America

*Plaintiff - Appellee*

v.

Ricky Lamar Wallace

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Davenport

——————————

Submitted: April 14, 2020
Filed: August 10, 2020
[Unpublished]

——————————

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.

——————————

PER CURIAM.

Ricky Lamar Wallace pleaded guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and two counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(B). The district court[1] sentenced Wallace to concurrent terms of 160 months' imprisonment after determining that his total offense level was 31, that his criminal history category was III, and that his sentencing range under the U.S. Sentencing Guidelines (U.S.S.G. or Guidelines) was 135 to 168 months' imprisonment.

Wallace first argues that the district court erred in applying a two-level sentencing enhancement under Guidelines § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." We review the district court's interpretation of the Guidelines *de novo* and its factual findings that Wallace maintained premises for the purpose of distributing methamphetamine for clear error. See United States v. Baker, 200 F.3d 558, 563 (8th Cir. 2000). To determine whether Wallace maintained the premises, the district court considers whether he "held a possessory interest in (e.g., owned or rented) the premises," and "the extent to which [he] controlled access to, or activities at, the premises." See U.S.S.G. § 2D1.1(b)(12) cmt. n.17. "Where the defendant lives in the house, this element is normally easily proved." See United States v. Miller, 698 F.3d 699, 706 (8th Cir. 2012) (quoting United States v. Verners, 53 F.3d 291, 296 (10th Cir. 1995)). To determine whether distributing a controlled substance was one of Wallace's "primary or principal uses for the premises," the district court "should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." See U.S.S.G. § 2D1.1(b)(12) cmt. n.17. Drug distribution "need not be the sole purpose . . . but must be one of the defendant's primary or principal uses for the premises, rather than one of defendant's incidental or collateral uses for the premises." Id.; See Miller, 698 F.3d at 707 (holding that the enhancement "applies when a defendant uses the premises for the purpose of

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

substantial drug-trafficking activities, even if the premises was also [a] family home at the times in question").

We conclude that the district court did not clearly err in finding that Wallace maintained residences at the Iowa Lodge and on Clapp Street for the purpose of distributing methamphetamine. Wallace distributed methamphetamine on at least three occasions from the Iowa Lodge in July and August of 2018. On each of those occasions, Wallace or his girlfriend came down from the second floor and sold methamphetamine to an undercover agent in the parking lot. See Miller, 698 F.3d at 706 (holding that three buys out of a residence can support a finding that a premises' primary or principal use may be the distribution of a controlled substance). Wallace also identified a room in the Lodge as "his room." Law enforcement learned that Wallace was moving in early August after having unsuccessfully tried to extend his stay at the Iowa Lodge. Shortly thereafter, Wallace sold marijuana to a second undercover agent at an address on Clapp Street in Iowa City, Iowa, which Wallace stated was his residence. During a subsequent search of the Clapp Street residence, the officers seized drugs, packaging materials, and drug paraphernalia, as well as the contents of a safe that belonged to Wallace, including two firearms, ammunition, two rocks of crack cocaine, and a bag of pills. Wallace's girlfriend and the owner of the Clapp Street residence stated that Wallace had brought the safe, accessed it, and owned items recovered from the search. Moreover, after he was arrested, Wallace expressed concern to a confidential informant in the jail that the police had raided his house and seized his firearms. The evidence thus supports a finding that Wallace maintained his room at Iowa Lodge for the purpose of distributing a controlled substance and then moved to the Clapp Street residence, where he continued his drug distribution activities. The district court thus did not err in applying a § 2D1.1(b)(12) enhancement.

Wallace next argues that the district court committed procedural error by relying on clearly erroneous facts to fashion Wallace's sentence. Because Wallace did not

object at sentencing, we review only for plain error. See United States v. Keller, 413 F.3d 706, 710 (8th Cir. 2005) (standard of review). Wallace contends that the district court improperly characterized the scale and packaging materials found in the Clapp Street residence as "drug paraphernalia" and assumed that the cocaine base found in the safe of the Clapp Street residence was used for distribution rather than consumption. We disagree. In light of the evidence that Wallace resided on Clapp Street where paraphernalia was found, that he continued distributing controlled substances while he lived there, and that he owned and accessed the safe which contained crack cocaine, pills, firearms, and ammunition, we conclude that the district court did not commit procedural error in sentencing Wallace.

The judgment is affirmed.

KELLY, Circuit Judge, dissenting.

The district court applied a two-level enhancement for Wallace's having "maintained a premises for the purpose of manufacturing or distributing a controlled substance." USSG § 2D1.1(b)(12) (2018). The court found the enhancement applied based on two separate residences: one at the Iowa Lodge in Coralville, Iowa; and another on Clapp Street in Iowa City. Because I believe the evidence does not support the enhancement based on either location, I respectfully dissent.

The evidence[2] showed, and Wallace concedes, that he lived at the Iowa Lodge and was involved in three controlled buys in the parking lot of the building. In two of the buys, the agent saw Wallace "come down the stairs from the second floor" and walk to the agent's car, where Wallace sold him methamphetamine. The record does not identify a particular apartment where Wallace lived, nor does it identify which

---

[2]Neither party offered evidence at the sentencing hearing on this issue, and the district court relied solely on the unobjected-to facts in the presentence report.

apartment he emerged from. Putting aside whether the record supports a finding that Wallace had possessory interest in, or controlled the activities at, a particular Iowa Lodge apartment, see id. cmt. (n.17) (among the factors a court should consider are "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises"), there was no evidence presented about *how* Wallace used the apartment. Law enforcement did not search this apartment, and no witness testified as to what may have been stored there, or what activities may have gone on inside. In short, there is no evidence to say, one way or the other, whether distributing or manufacturing controlled substances was one of Wallace's "primary or principal uses for the premises," rather than one of his "incidental or collateral uses" for the Iowa Lodge.

Wallace also concedes that he lived for a short time on Clapp Street, where he directed another agent to meet him for a fourth controlled buy. Wallace exited the building at Clapp Street, approached the agent's car, and sold him marijuana. Law enforcement searched the Clapp Street residence one day later and found drugs and drug-related items. These included unidentified packaging material and drug paraphernalia; in a safe they found two firearms, loose ammunition, two rocks of crack cocaine, and a bag of pills. At the time the search warrant was executed, officers "located five individuals in and around the [Clapp Street] residence, [but] Wallace was not one of them."

Officers seized evidence of drug trafficking from the Clapp Street residence, but that alone is not sufficient to support the § 2D1.1(b)(12) enhancement. Instead, the government had the burden of proving that Wallace maintained the residence "for the purpose of . . . distributing a controlled substance." Drug trafficking must be "one of the defendant's primary or principal uses" of the property, rather than merely an "incidental or collateral use" for this enhancement to apply. See USSG § 2D1.1(b)(12), cmt. (n.17); United States v. Renteria-Saldana, 755 F.3d 856, 859 (8th

-5-

Cir. 2014) (enhancement was appropriate when there was no furniture or clothing to suggest the house was anything other than a drug premises, and the defendant brought both drugs and drug-sale proceeds to the house). See also United States v. Anwar, 880 F.3d 958, 971–72 (8th Cir. 2018) (affirming the enhancement where "there was no question" that the defendant used a storefront "for the purpose of substantial drug-trafficking activities").

The government offered no evidence that drug trafficking was Wallace's primary or principal use of either the Iowa Lodge or the Clapp Street residence. This court has concluded that even when a premises is the person's home, the enhancement may apply "when a defendant [also] uses the premises for the purpose of substantial drug-trafficking activities." United States v. Miller, 698 F.3d 699, 707 (8th Cir. 2012). But in that case, the husband-and-wife team moved "as much as two kilograms per week" of methamphetamine for six years, and specifically made use of the family home as a "drug premises" by selling drugs from the property itself and by instrumentally using the property to facilitate the distribution—for example by hiding drugs in the barbeque pit and in shoes on the front porch. Id. at 702–03. Here, the district court did not find that Wallace was involved in "substantial drug-trafficking activit[y]" out of either residence. See id. at 707. The government likewise did not offer evidence of how often Wallace used the premises for distribution purposes and how often Wallace used the premises for lawful purposes. See USSG § 2D1.1(b)(12), cmt. (n.17).

Applying the enhancement in this case risks endorsing its application in almost any circumstance where, at the time a defendant distributes a controlled substance, she has a place to call home. More is required to justify a § 2D1.1(b)(12) enhancement than the simple combination of a defendant both distributing (or manufacturing) controlled substances and having a residence. The defendant must use the premises "for the purpose of" distributing or manufacturing controlled substances. USSG § 2D1.1(b)(12). The government did not make that showing here. Accordingly, I respectfully dissent.

_____