FILED
United States Court of Appeals
Tenth Circuit

May 2, 2025

Christopher M. Wolpert
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HATCHER RAMON DAY, a/k/a Trevor,
a/k/a Boog, a/k/a Boogie,

    Defendant - Appellant.

No. 23-5084

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:22-CR-00389-JZ-1)**
_____

John M. Bowlin of Bowlin & Schall LLC, Greenwood Village, Colorado, for Defendant-Appellant.

Leena Alam, Assistant United States Attorney, Tulsa, Oklahoma (Clinton J. Johnson, United States Attorney, with her on the brief), for Plaintiff-Appellee.
_____

Before **HARTZ**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Hatcher Ramon Day (Defendant) appeals his sentence, contending that the district court erred in calculating his guidelines sentencing range by applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises for

the purpose of manufacturing or distributing a controlled substance." Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Except as indicated below, the relevant facts are not in dispute on appeal. In September 2022 Defendant used a short-term rental home in Tulsa, Oklahoma, to distribute fentanyl pills. The rental was booked by an unindicted female co-conspirator at Defendant's direction through Airbnb.com, an online marketplace for short-term housing rentals.

Mallory Massey was the property manager of the rental. The keypad on the front door of the residence notified her when the door was opened. Because she had not received any such notification during Defendant's rental period, she visited the rental on September 9 to see if it had been abandoned. After she entered the residence she discovered that the master-bedroom door was locked. When she knocked on the door, Defendant opened it. He looked as if he had just awakened. Ms. Massey said that she was checking on the rental because of the absence of front-door activity. Defendant told her that he had been using the back door to enter and exit.

Several days later, on September 15, police officers saw Defendant sell 2.75 grams of fentanyl pills to a confidential informant inside the rental at the front-door threshold. Officers executed a search warrant at the residence on September 19. They found Defendant and arrested him. The search recovered fentanyl and marijuana, scales, firearms, ammunition, and cash. Officers also found various personal belongings.

2

A grand jury indicted Defendant on charges of (1) possession of fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi); (2) possession of firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Defendant was convicted on all three counts following a jury trial.

The presentence investigation report (PSR) recommended applying § 2D1.1(b)(12), which provides for a two-level increase in the offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." According to the PSR, Defendant "maintained and used a rental home . . . to store and distribute fentanyl as one of his primary or principal uses for the premises." R., Vol. II at 15. With this enhancement, Defendant's total offense level was 34. His guidelines sentencing range was 188 to 235 months' imprisonment for counts one and three; and on count two there was a mandatory 60-month term to run consecutively. Without the enhancement, Defendant would have faced a guidelines range of 151 to 188 months' imprisonment.

Defendant filed an objection to the recommended application of the enhancement, asserting that there was "no evidence" indicating "that the house was being maintained by [Defendant]." R., Vol. I at 111 (emphasis and internal quotation marks omitted).

At sentencing, the court applied the enhancement. It adopted the facts stated in the PSR and in the probation officer's response to Defendant's objection, which said

3

that Defendant maintained the premises because he "solely occupied the residence" and his personal belongings were recovered in the search of the rental. R., Vol. II at 25. The court found that Defendant "traveled to Tulsa to distribute a quantity of fentanyl pills and a quantity of meth," *id.*, Vol. III at 502, that he "set up the rental for the primary purpose of selling fentanyl as he traveled between Arizona and Oklahoma," *id.* at 501–02, that he directed an unindicted co-conspirator to book the rental for him, and that the drugs, guns, ammunition, and money found at the residence did not belong to the co-conspirator. The court also stated that Defendant could not "avoid [the] enhancement merely because he was apprehended before he had an opportunity to make more sales with the drugs that were found in the home." *Id.* at 502. The court concluded that "it's fairly clear that this was a drug house and that [Defendant] was in charge." *Id.* at 503.

Defendant was sentenced to 248 months' imprisonment (188 months on counts one and three (to run concurrently) and 60 months on count two (to run consecutively to the other counts)).

## II.    DISCUSSION

### A.    Standard of Review

When evaluating whether the district court properly applied a sentencing enhancement, "we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts. Whether the facts found by the district court are sufficient to warrant an enhancement

is reviewed de novo." *United States v. Montano*, 109 F.4th 1275, 1280 (10th Cir. 2024) (citation and internal quotation marks omitted).

### B.    The Enhancement

Section 2D1.1(b)(12) calls for a two-level enhancement to the base offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Defendant does not dispute that the rental was used for drug-trafficking purposes. His sole argument on appeal is that he did not "maintain" the rental within the meaning of the enhancement. We disagree and hold that the enhancement by the district court is supported by the record.

The word *maintain* is not defined in § 2D1.1(b)(12). But Application Note 17 of the commentary to the section states:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.

> Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

§ 2D1.1 cmt. n.17. This commentary is authoritative. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal

statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").[1] We take particular note that the two expressed factors are only "among" the factors for courts to examine in evaluating whether the defendant maintained the premises. § 2D1.1 cmt. n.17.

We may also look to judicial decisions interpreting the guideline's statutory counterpart, 21 U.S.C. § 856(a)(1), which makes it unlawful to "knowingly . . . maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." These decisions are persuasive because the § 2D1.1(b)(12) enhancement "was developed as a response to the Fair Sentencing Act of 2010, which directed the Sentencing Commission to provide for a two-level enhancement when the defendant maintained an establishment for the manufacture or distribution of a controlled substance, as generally described in 21 U.S.C. § 856." *United States v. Jones*, 778 F.3d 375, 384 (1st Cir. 2015) (brackets and internal quotation marks omitted); *see United States v. Murphy*, 901 F.3d 1185, 1192 n.9 (10th Cir. 2018) ("Because we have interpreted the statute similar to the guideline, . . . discussion of § 856(a)(1) [is] instructive."). In construing § 856(a)(1), we have considered "[a]cts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying the food to those at the site, and continuity . .

---

[1] Although the Supreme Court limited judicial deference to executive agencies' interpretations of their own regulations in *Kisor v. Wilkie*, 588 U.S. 558 (2019), this court has held that *Kisor* did not abrogate *Stinson*. *See United States v. Maloid*, 71 F.4th 795, 805 (10th Cir. 2023).

. .” *United States v. Verners*, 53 F.3d 291, 296 (10th Cir. 1995) (internal quotation marks omitted). We now turn to an examination of the relevant factors challenged by Defendant.

### 1.    *Control*

Defendant first argues that he "did not meaningfully control access to, or activities at, the premises." Aplt. Br. at 13. We cannot agree.

In *Verners* we held that the defendant "must have a substantial connection to the home and must be more than a casual visitor in order to satisfy th[e] [maintain] element" under § 856(a)(1). 53 F.3d at 296 (internal quotation marks omitted); *see United States v. Cortez-Diaz*, 565 F. App'x 741, 748 (10th Cir. 2014) (applying casual-visitor standard in context of § 2D1.1(b)(12)). The defendant in *Verners* used his former bedroom in his mother's home to store guns, drugs, drug paraphernalia, large amounts of cash, record albums, clothes, and receipts and business records related to his drug-trafficking activities. *See Verners*, 53 F.3d at 293–94. We concluded that the defendant "was far from a casual visitor" and that his actions "fit within the meaning of the word 'maintain,'" explaining that he "exercised dominion and control over the house, or at least over his bedroom" because he "had lived there and continued to use the bedroom to store many of his personal belongings and business-related items," "had a key to the house," and "came and went as he pleased." *Id.* at 296.

Similarly, Defendant used the rental to store both items related to his drug-trafficking activities and his personal belongings. The search of the residence

7

recovered 888 grams of fentanyl pills in a box in a drawer of a bedroom desk and in a basket in the bedroom closet, a pistol in the desk drawer and several loaded firearms in a red duffle bag on the floor of the closet, 70 rounds of ammunition, digital scales, a small quantity of marijuana, and more than $15,000. In addition, officers discovered a PlayStation, articles of clothing, food under the bed, and utensils. Defendant also "came and went as he pleased," as he used the back door to enter and exit the residence and was presumably provided the passcode to the keypad on the front door at the beginning of the rental period. *Id.*; *see United States v. Wesley*, 123 F.4th 423, 428 (5th Cir. 2024) ("[I]n many cases where the defendant did not own or rent the premises, but control was deemed to exist for purposes of § 2D1.1(b)(12), *the defendant had a key to the premises*." (emphasis added and internal quotation marks omitted)).

In addition to the elements of control in *Verners*, it appeared that Defendant slept in the rental and was the only person occupying it. He locked the door to the bedroom where he apparently slept, and he kept the drug-trafficking items and his personal belongings with him in the bedroom. On this record, there was ample evidence that Defendant exercised control over the rental. *See Jones*, 778 F.3d at 385 (defendant "exercised dominion and control over the apartment" for purposes of § 2D1.1(b)(12) in that he "came and went at will," "slept there whenever he pleased," "had a key," and "[h]e—and no one else—kept clothes and toiletries there").

Defendant counters that (1) other individuals possessed the passcode to the keypad on the front door (at least Ms. Massey and the co-conspirator); (2) Ms.

8

Massey had the ability to change the code and revoke his access to the rental; (3) Defendant did not have the ability to change the code; and (4) Ms. Massey could—and at one point did—access the residence on her own while Defendant was staying there.

Application of the enhancement, however, does not require the defendant to have exclusive control over the premises. *See United States v. Lozano*, 921 F.3d 942, 946–48 (10th Cir. 2019) (applying enhancement to defendant where house was co-maintained by co-conspirator); *Verners*, 53 F.3d at 296 (applying § 856(a)(1) to defendant who maintained childhood bedroom in mother's home); *United States v. Taylor*, 85 F.4th 386, 390 (6th Cir. 2023) (holding that defendant maintained co-conspirator's residence where he did not live and in which he had no title, explaining "[t]hat control need not be either exclusive or continuous" and that "[t]o hold otherwise . . . would mean that a defendant could run a drug operation in a house without triggering the enhancement so long as he was not the house's lawful owner" (brackets, ellipsis, and internal quotation marks omitted)); *United States v. Beechler*, 68 F.4th 358, 369 (7th Cir. 2023) (enhancement applied to defendant who maintained bedroom in girlfriend's residence, explaining that "[a] defendant maintains the premises for purposes of this enhancement even if others also have control of the premises"); *United States v. McArthur*, 11 F.4th 655, 662 (8th Cir. 2021) (enhancement applied to defendant who shared residence with co-conspirator). And even if exclusive control were required, Defendant appeared to exercise such control over the main bedroom, since he locked the door and slept and stored his belongings

9

there. *See United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013) ("A defendant . . . need not maintain the whole home for distributing drugs to qualify for the enhancement; using a room or another enclosure for storage of the drugs suffices, as the application note indicates." (internal quotation marks omitted)).

### 2.    Upkeep

Defendant tries to escape the enhancement by narrowing the definition of *maintain*, contending that we should apply "[t]he ordinary sense of the word"—that is, "have a role in keeping the property in good condition." Aplt. Br. at 14; *see* Webster's Third New International Dictionary at 1362 (2002) (defining *maintain* as "1: to keep in a state of repair, efficiency, or validity . . . preserve from failure or decline"). He asserts that he never "hired a repairperson, replaced an appliance, mowed the lawn, or even changed a lightbulb." Aplt. Br. at 14.

Although evidence that Defendant "repair[ed] the site" could be probative of his maintaining the premises, *Verners*, 53 F.3d at 296 (internal quotation marks omitted), the enhancement applies to more than just the handyman drug-trafficker suggested by Defendant. What the guideline requires is that the defendant "maintained the premises *for the purpose of manufacturing or distributing a controlled substance*." § 2D1.1(b)(12) (emphasis added). Satisfying that purpose hardly requires that the maintained property be sanitary or pleasant. All that is necessary is that it be kept suitable for manufacturing or distributing controlled substances. A dilapidated shack could suffice. In short, one need not ensure the premises are "well-maintained" to maintain them. *See United States v. Payton*, 636

10

F.3d 1027, 1043 (8th Cir. 2011) (in affirming conviction under § 856(a)(1), court rejected defendant's argument that he "did not clean or perform repairs on the apartment"). It is the fact of possession or control that counts.

This understanding of the term *maintain* is fully consistent with common dictionary definitions. One definition in the most cited legal dictionary is "[t]o continue in possession of (property, etc.)." Black's Law Dictionary at 1139 (12th ed. 2024); *see* Oxford English Dictionary (online ed. 2025), https://perma.cc/JBE4-WH93 (defining *maintain* as "preserve, cause to continue in being (a state of things, a condition, an activity, etc.)," II.7.a; "continue in, preserve, retain," II.8.e; "cause to continue in a specified state, relation, or position, or at a specified level or number," II.10.a).

Thus, the enhancement has been repeatedly applied to hotel and motel guests who used their rooms for manufacturing or distributing controlled substances while the "maintenance" in Defendant's sense was performed by housekeeping personnel who had nothing to do with the drug trade. *See, e.g.*, *United States v. Owens*, No. 21-3898, 2023 WL 2127334, at *1 (8th Cir. Feb. 21, 2023); *United States v. Hill*, No. 22-5274, 2023 WL 152474, at *3 (6th Cir. Jan. 11, 2023); *United States v. Harwell*, 849 F. App'x 437, 439 (4th Cir. 2021); *United States v. Cabrera*, 836 F. App'x 617, 618 (9th Cir. 2021); *United States v. Hepburn*, 776 F. App'x 649, 650 (11th Cir. 2019); *United States v. Nimerfroh*, 716 F. App'x 311, 315 (5th Cir. 2018); *United States v. Snelson*, 687 F. App'x 422, 425 (5th Cir. 2017). We reject Defendant's handyman argument.

### 3.    *Duration and Continuity*

Defendant challenges whether the evidence sufficiently supported the duration and continuity factors necessary to establish maintenance. *See Verners*, 53 F.3d at 296 (noting those two factors as relevant under § 856(a)(1)); *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997) (stating that under § 856(a)(1) "'[m]aintain' connotes a degree of continuity and duration that is not an attribute of [simple] possession"). He argues that he did not use "the short-term rental home long enough or consistently enough to fairly say that he maintained it." Aplt. Br. at 15. We are not persuaded.

Defendant did not dispute the statements in the PSR that he began distributing fentanyl pills from the rental "as early as September 2022," R., Vol. II at 13, that he sold pills to a confidential informant at the rental on September 15, and that he was present at the residence when law enforcement executed the search warrant on September 19. Ms. Massey testified that on the day of the search the residence had been rented for almost a month. And both before and during trial Ms. Massey identified Defendant as the individual she spoke with inside the rental on September 9.

Regarding duration, however, Defendant challenges Ms. Massey's identification of him as the person whom she woke up in the main bedroom on September 9. He points out that during her testimony Ms. Massey remarked that Defendant looked similar to his half-brother, Charles Briggs, who had testified earlier. Thus, he says, "the district court's findings indicate no more than that

[Defendant] used the residence between September 15th and September 19th." Aplt. Br. at 15.

We need not decide, however, whether a four-day period is of sufficient duration to support "maintenance." There is ample evidence that Defendant occupied the rental for at least 10 days—from the day he was awakened on September 9 through the day the search warrant was executed on September 19.

To begin with, the district court could credit Ms. Massey's identification of Defendant as the person she saw on September 9. Mr. Briggs himself testified that he did not stay or sleep at the rental. Also, an investigator testified that officers were trying to determine where Mr. Briggs was living and that surveillance and other evidence indicated that he was not staying at the rental. Moreover, there was no evidence that any room other than the main bedroom was ever occupied.

Defendant complains that the district court never explicitly found that he was present at the rental on September 9. But the court did adopt the PSR finding that Defendant "solely occupied the residence," which Defendant did not contest at sentencing. R., Vol. II at 25; *see id.* at 28 ("The court adopts the [PSR] without change."). If he was the sole occupant, then Ms. Massey must have encountered him, not Mr. Briggs, at the residence. And even in the absence of an explicit finding by the court about such a detail, we "view the evidence and inferences therefrom in the light most favorable to the district court's determination [that an enhancement applies]." *United States v. Beltran*, 571 F.3d 1013, 1020 (10th Cir. 2009) (internal quotation

marks omitted). Defendant's duration argument fails because it is based on a false factual premise.[2]

As for continuity, Defendant interprets the court's finding that he used the rental "for the primary purpose of selling fentanyl as he traveled between Arizona and Oklahoma," R., Vol. III at 501–02, to indicate that during the rental period Defendant "was sometimes in Phoenix, Arizona," "sometimes in Tulsa, Oklahoma," and "sometimes making the more-than-1,000 mile journey between those two locations." Aplt. Br. at 16.

But the fact that Defendant may have been traveling back and forth from the rental does not take him very far. The sentencing judge could reasonably find that, aside from the ultimate control possessed by property manager Massey, Defendant controlled all entrance and departure from the rental during the rental period. *See* § 2D1.1 cmt. n.17 (stating that one of the principal factors to be considered in assessing whether a defendant maintained the premises is "the extent to which the defendant controlled access to, or activities at, the premises"); *United States v. Carter*, 834 F.3d 259, 262 (3d Cir. 2016) ("Neither the Guidelines commentary nor the case law interpreting § 856 requires that the defendant be physically present or

---

[2] It is doubtful that Defendant preserved in district court any argument that he did not occupy the rental long enough to "maintain" it. The requirement of duration was not mentioned in his objections to the PSR or at the sentencing hearing. The only possible comment on duration was a reference in his objection to the PSR to the fact that the search warrant was executed four days after the sale to the confidential informant. In any event, neither in district court nor on appeal has Defendant even hinted at an argument that the 10 days between September 9 and September 19 was an insufficient duration, so we need not address whether it was.

involved on a daily basis to 'maintain' a premises for the purpose of the enhancement."); *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018) ("[A] person need not be present at the location constantly for the enhancement to apply." (internal quotation marks omitted)). This court concluded in *Lozano* that the enhancement properly applied to the defendant, even though "he did not live in the house consistently" and "lived in Mexico for the first *six months* of surveillance," because, in part, he "controlled who resided in the house in his absence." *Lozano*, 921 F.3d at 945, 947 (emphasis added). Defendant's continuity of control supports the district court's maintenance determination.

### 4.      *Possessory Interest*

Finally, Defendant argues that the district court erred in applying the enhancement because he "did not have a possessory interest in the short-term rental." Aplt. Br. at 10. He asserts that he did not have a property right in the rental and emphasizes that he did not book the rental himself (the co-conspirator booked it for him at his direction). And he states that the policies of Airbnb do "not allow one person to reserve a property on behalf of another." Aplt. Br. at 12. Hence, he says that he had no legal right or license to possess the property. But this argument, too, comes up short.

Although evidence of ownership or a license is probative, it is well-established that application of the enhancement does not require the defendant to hold a formal property interest in the premises. *See Jones*, 778 F.3d at 385 (1st Cir.) ("The enhancement does not require either ownership or a leasehold interest. This makes

good sense: it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." (internal citation omitted)); *United States v. Rodriguez*, 40 F.4th 117, 122 (3d Cir. 2022) (following *Jones*); *Taylor*, 85 F.4th at 390 (6th Cir.) ("[E]ven without a legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control." (internal quotation marks omitted)); *United States v. Ford*, 22 F.4th 687, 694 (7th Cir. 2022) (recognizing that "[t]he defendant does not necessarily need to have owned the premises" for the enhancement to apply); *United States v. Renteria-Saldana*, 755 F.3d 856, 859–860 (8th Cir. 2014) ("Although [defendant] did not own or reside at the . . . stash house, . . . [he] maintained the house for the purpose of distributing drugs."); *Cortez-Diaz*, 565 F. App'x at 748 (10th Cir.) ("[O]wnership is not dispositive of whether a defendant maintains a stash house." (internal quotation marks omitted)). As one court put it, "Drug kingpins are not known for signing leases for their drug houses." *United States v. Cannon*, 552 F. App'x 512, 516 (6th Cir. 2014).

By the same token, we see little relevance that Defendant's stay may have violated the policies of Airbnb. "Maintaining a premises can be done illegally." *Hill*, 2023 WL 152474, at *3 (6th Cir.). "[A]ctual possession can occur without a corresponding right to possession, while still triggering the enhancement. To hold otherwise would mean that a defendant could run a drug operation in an abandoned

16

house without triggering the enhancement so long as he was not the house's lawful owner." *Id.*

All told, although the rental was not in Defendant's name, his control over the rental sufficed for application of the enhancement. The district court could reasonably find that over a period of more than 10 days, Defendant was the sole occupant of the rental, where he ate, slept, and carried on his drug business, coming and going as he pleased.

## III.    CONCLUSION

We **AFFIRM** Defendant's sentence.