FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JADE SHANE,

    Defendant - Appellant.

No. 25-8070
(D.C. No. 2:25-CR-00016-SWS-1)
(D. Wyo.)

_____

## ORDER AND JUDGMENT*

_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.

_____

Jade Shane appeals his 168-month prison sentence for methamphetamine distribution, arguing the district court erred by increasing his offense level under Section 2D1.1(b)(12) of the U.S. Sentencing Guidelines because he maintained a premises for drug distribution. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

---

  * After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Mr. Shane pled guilty to one count of conspiracy to distribute methamphetamine in violation of, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A).  Based on evidence described below, the district court then applied § 2D1.1(b)(12) to increase his advisory sentencing range under the Guidelines.

### A. *Section 2D1.1(b)(12)*

Section 2D1.1(b)(12) provides: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase [the offense level] by 2 levels."

The Guidelines do not define the term "maintained," but the Sentencing Commission's "authoritative" commentary instructs that "'[a]mong the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.'" *United States v. Day,* 135 F. 4th 1248, 1252 (10th Cir. 2025) (quoting § 2D1.1 cmt. n.17).

Courts also consider "'acts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying the food to those at the site, and continuity.'" *Id.* at 1252–53 (brackets omitted) (quoting *United States v. Verners*, 53 F.3d 291, 296 (10th Cir. 1995)).  "[W]here the place in question is a residence, the defendant must have a substantial connection to the home and must be more than a casual visitor." *Verners*,

2

53 F.3d at 296 (quotations omitted). But "[w]here the defendant lives in the house," the "maintained" element "is normally easily proved." *Id.*

To evaluate whether a premises was used "for the purpose of manufacturing or distributing a controlled substance," we apply the Sentencing Commission's guidance that

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

*United States v. Murphy*, 901 F.3d 1185, 1190 (10th Cir. 2018) (emphasis omitted) (quoting § 2D1.1 cmt. n. 17).

## B. *The PSR*

The presentence investigation report ("PSR") summarized the conduct underlying Mr. Shane's conviction. It relied in part on interviews and proffers that Mr. Shane's co-conspirators had provided to law enforcement.[1] Co-conspirators Tyler Kihlstrom and Elysia Grams lived in Wyoming and described traveling to Mr. Shane's house in Colorado four or five times to buy methamphetamine. Mr. Kihlstrom reported seeing multiple firearms and large amounts of drugs at Mr. Shane's house, including once seeing 10,000 to 15,000 pills he believed to be

---

[1] Co-conspirators Tyler Kihlstrom and Elysia Grams were charged and convicted in an earlier-filed case. Mr. Shane and co-conspirator Calvin Stroup were both indicted in this case.

fentanyl in a duffle bag in Mr. Shane's shed. Altogether, Mr. Kihlstrom described purchasing multiple pounds of methamphetamine from Mr. Shane at his home.

The PSR also summarized statements from co-conspirator Calvin Stroup. He reported visiting Mr. Shane's residence multiple times, including the garage where Mr. Shane kept drugs, and stated he regularly saw thousands of fentanyl pills. He also said Mr. Shane stored methamphetamine and cocaine there.

The PSR calculated a Guidelines sentencing range of 188 to 235 months. That calculation included a two-level increase in the offense level under § 2D1.1(b)(12). Mr. Shane objected to the application of § 2D1.1(b)(12) on several grounds, including that he did not own or lease the home and that no evidence of drug manufacturing or large amounts of cash had been found there.

The Probation Office issued a PSR addendum responding to the parties' objections and a revised PSR. The revised PSR did not change its statement about application of § 2D1.1(b)(12), which read as follows:

> The defendant resided at 3211 11th Avenue, Evans, Colorado, throughout the duration of the conspiracy and offense conduct. The defendant routinely stored large quantities of controlled substances at this residence including methamphetamine and fentanyl, in addition to numerous firearms. The defendant routinely used his residence, including safes in the garage and a shed at the rear of the property, as a storage facility and clearing house for distributing these controlled substances. Co-conspirators purchased controlled substances directly from the defendant at his residence several times over the span of months. On September 5, 2024, law enforcement executed a search warrant, which resulted in the seizure of multiple controlled substances in excess of user amounts as well as numerous firearms. The majority of evidence seized was located in the garage and shed . . . .

4

Aplt. Br. at 2–3 (quoting R., vol. 2 at 79).[2]  Responding to Mr. Shane's objections,

the addendum explained that Mr. Shane's father-in-law owned the home but

Mr. Shane had resided there with his wife and her children for multiple years.

### C. *Sentencing*

At the sentencing hearing, the Government offered testimony from Wyoming

Division of Criminal Investigation Special Agent Fielding Phillips, who investigated

the conspiracy.  He testified that Mr. Kihlstrom and Ms. Grams had purchased

methamphetamine from Mr. Shane at his home in Colorado, then re-distributed it in

Wyoming.  Special Agent Phillips conducted three controlled buys of

methamphetamine from Mr. Kihlstrom and Ms. Grams and arranged for a fourth.

Shortly before the time set for the last purchase, tracking of Mr. Kihlstrom's phone

showed he traveled to Colorado, near Mr. Shane's home.  Police then arrested

Mr. Kihlstrom and Ms. Grams and found five hundred grams of methamphetamine

and $8,000 cash in their car.

Special Agent Phillips further testified that, roughly three months later, police

in Colorado obtained a warrant to search the house identified as Mr. Shane's

residence.[3]  They found 12 firearms; 232 grams of methamphetamine; 84 grams of

fentanyl pills; and also scales and baggies, paraphernalia associated with drug

---

[2] This portion of the PSR is quoted in Mr. Shane's publicly filed brief.  Aplt. Br. At 2–3. *See United States v. Hardy*, 149 F.4th 1153, 1166 n.6 (10th Cir. 2025).

[3] The co-conspirators often referred to the house as being in Greeley.  In fact, it is located in the adjoining municipality of Evans.

distribution.  Much of this contraband was found in a safe in the garage, where Mr. Shane's wallet and driver's license were also found.  Mr. Shane was present when police executed the search.  Special Agent Phillips reported seeing him doing yard work just before this search.

In addition to Special Agent Phillips's testimony, the Government introduced an inventory and report from the search; photographs of items recovered from the garage safe, including Mr. Shane's wallet and driver's license; and a lab report confirming substances recovered in the search included methamphetamine and fentanyl.

Based on the evidence, the Government argued for application of the § 2D1.1(b)(12) enhancement.  Defense counsel relied on Mr. Shane's written objections and suggested the co-conspirators' statements were not credible, but did not make any further argument addressing this enhancement at sentencing.  Largely relying on the co-conspirators' statements summarized in the PSR, the district court found "there were [a] frequent number of drug sales occurring at the home."  R., vol. 3 at 82.  It noted this included the garage, where Mr. Shane's driver's license was found.  The court found "this premises appeared to be a central hub for the drug sale activities" of the conspiracy.  *Id.*

Responding to Mr. Shane's objection, the district court said his not owning or leasing the house did not make the § 2D1.1(b)(12) enhancement inapplicable.  The court stated it "believe[d] it was his father-in-law's house," but said the evidence showed "Mr. Shane . . . appeared to be in control of the premises."  *Id.* at 83–84.  It

6

concluded the "totality of the circumstances support application of the two-level enhancement" under § 2D1.1(b)(12). *Id.* at 84.

The district court applied the enhancement, resulting in a total offense level of 35 and a Guidelines range of 188 to 235 months. The court then imposed a below-Guidelines sentence of 168 months in prison. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review and Evidentiary Burden*

"When evaluating whether the district court properly applied a sentencing enhancement, we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *Day*, 135 F.4th at 1251–52 (quotations omitted). A factual finding is clearly erroneous if it "lack[s] factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Hardy*, 149 F.4th 1153, 1164 (10th Cir 2025) (quotations omitted). "Whether the facts found by the district court are sufficient to warrant an enhancement is reviewed de novo." *Day*, 135 F.4th at 1252 (quotations omitted).

The government must support an offense level increase by a preponderance of the evidence. *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022). When deciding if an enhancement applies, the sentencing court may consider "any relevant information, as long as it adheres to a preponderance of the evidence standard." *Hardy*, 149 F.4th at 1165 (quotations omitted). It may rely on hearsay statements "if they bear some minimal indicia of reliability." *Id.* (quotations

7

omitted). "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Id.* (quotations omitted). But this is "a low hurdle." *Id.* (quotations omitted). In addition, "the district court may rely on facts stated in the presentence report unless the defendant has objected to them." *McDonald*, 43 F.4th at 1095 (quotations omitted).

## B. *Analysis*

Mr. Shane does not dispute that the home was used for drug distribution. He challenges only the conclusion that he "maintained" the premises, arguing "the government failed to prove that [he] owned, controlled[,] or lived at the residence." Aplt. Br. at 12.

Mr. Shane contends he "was just a casual visitor who stored some items for safe-keeping outside his relative's home" and thus lacked a substantial connection to the premises. *Id.* at 13. He has not preserved this argument for appeal. Although he objected to the PSR's proposed application of §2D1.1(b)(12) on multiple grounds, he did not dispute its factual statement that he "resided at 3211 11th Avenue . . . throughout the duration of the conspiracy." Aplt. Br. at 2 (quoting R., vol. 2 at 79). Nor did he question the PSR's listing the home as his legal address. And he failed to address the PSR addendum's explanation that although his father-in-law owned the home, Mr. Shane had lived there for multiple years.

The evidence otherwise supports the district court's conclusion that he "maintained" this premises. His co-conspirators' statements repeatedly described it as his home, where they visited him to purchase drugs. Special Agent Phillips's

testimony and the evidence found in the home search, including distribution quantities of drugs found together with Mr. Shane's wallet and driver's license, corroborated their statements. Because the record supported a finding that Mr. Shane "live[d] in the house," the "maintained" element for application of § 2D1.1(b)(12) was "easily proved." *Verners*, 53 F.3d at 296.

Mr. Shane argues the "alleged act of doing some yard work and having some items in the garage" fails to show a "substantial connection" to the home. Aplt. Br. at 13 (quotations omitted). But the district court based its findings not only on this evidence but also on "the testimony, the various Mirandized statements, and the [PSR]." R., vol. 3 at 83.

Mr. Shane emphasizes he did not own or lease the home. But "it is well-established that application of the enhancement does not require the defendant to hold a formal property interest in the premises." *Day*, 135 F.4th at 1257; *see also Verners*, 53 F.3d at 296 (defendant "definitely knowingly maintained" a house where she "lived . . . continuously for a long period," although it was owned by her ex-husband and she did not pay rent).

Finally, Mr. Shane argues the district court erred by relying on the PSR. But the district court was permitted to rely on the corroborated hearsay statements, *see Hardy*, 149 F.4th at 1165, and also on "facts stated in the presentence report unless the defendant . . . objected to them," *McDonald*, 43 F.4th at 1095 (quotations omitted). Mr. Shane did not object to the PSR's factual statement that he had resided at this home for the duration of the conspiracy.

9

## III. CONCLUSION

Because the district court's findings are not clearly erroneous and we agree the facts support application of § 2D1.1(b)(12), we affirm Mr. Shane's sentence.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge